# **EXHIBIT 1**



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

WINMAR CONSTRUCTION, INC.
    Vs.
THEODORE KASEMIR

C.A. No.    2014 CA 007190 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge BRIAN F HOLEMAN
Date:  November 12, 2014
Initial Conference: 9:30 am, Friday, February 13, 2015
Location:  Courtroom 214
        500 Indiana Avenue N.W.
        WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

WINMAR CONSTRUCTION, INC.
_____
                                    Plaintiff

vs.

**14 - 0 0 7 1 9 0**
Case Number _____

THEODORE KASEMIR AND ROGER GREENFIELD,
                                    Defendant

## SUMMONS

To the above named Defendant **ROGER GREENFIELD:**

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**Charles H. Camp**
_____
Name of Plaintiff's Attorney

**Law Offices of Charles H. Camp, P.C.**
_____
Address

**1025 Thomas Jefferson Street, NW, Ste. 115G**
**Washington, D.C.  20007**

**(202) 457-7786**
_____
Telephone

*Clerk of the Court*

By _____
                    Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화하십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ።

IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT.  IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
                                    Demandante

contra

_____        Número de Caso: _____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                            *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                            Por: _____

_____
Dirección                                            Subsecretario

_____
                            Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

**WINMAR CONSTRUCTION, INC.**
_____
                                    Plaintiff                           **14 - 0 0 7 1 9 0**

vs.                                               Case Number _____

**THEODORE KASEMIR AND ROGER GREENFIELD,**
                                    Defendant

**SUMMONS**

To the above named Defendant **THEODORE KASEMIR:**

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service.  If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer.  A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you.  The attorney's name and address appear below.  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**Charles H. Camp**
_____
Name of Plaintiff's Attorney                        _Clerk of the Court_

**Law Offices of Charles H. Camp, P.C.**
_____
Address                                        By _____
**1025 Thomas Jefferson Street, NW, Ste. 115G**                              Deputy Clerk
**Washington, D.C.  20007**
**(202) 457-7786**                                 Date __11/12/14__
Telephone

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ለማግኘት፡ (202) 879-4828 ይደውሉ።

    IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT.  IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT.  IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                    CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
                                                    Demandante

           contra
                                                    Número de Caso: _____

_____
                                                    Demandado

### CITATORIO

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio.  Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación.  Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante.  El nombre y dirección del abogado aparecen al final de este documento.  Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación  por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados.  Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante.  Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                    *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                    Por: _____
_____                    Subsecretario
Dirección

_____

                                    Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오        ፡ላማርኛ፡ትርጉም፡ለማግኘት፡ (202) 879-4828 ይደውሉ፡

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA.   SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO.  SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

        Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

                              Vea al dorso el original en inglés
                              See reverse side for English original

                                                                            CASUM.doc



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | | |
|---|---|---|
| **WINMAR CONSTRUCTION, INC.**<br>**1010 Wisconsin Avenue, NW**<br>**Washington, DC 20007,** | : | |
| | : | |
| | : | |
| *Plaintiff,* | : | **14 - 0 0 7 1 9 0** № |
| | : | |
| **v.** | : | |
| | : | |
| **THEODORE KASEMIR** | : | **Case No.:** |
| **1840 Pickwick Avenue** | : | |
| **Glenview, IL 60026** | : | |
| | : | |
| **and** | : | |
| | : | |
| **ROGER GREENFIELD** | : | |
| **1840 Pickwick Avenue** | : | |
| **Glenview, IL 60026,** | : | |
| | : | |
| *Defendants.* | : | |



### COMPLAINT

Plaintiff and Judgment Creditor Winmar Construction, Inc. ("Plaintiff" or "Winmar"), by and through its undersigned counsel, alleges the following:

### NATURE OF THE ACTION

1.      This is an action for Breach of Contract, Unjust Enrichment and Quantum Meruit against Mr. Theodore Kasemir ("Mr. Kasemir") and Mr. Roger Greenfield ("Mr. Greenfield") for those individuals' failure to pay Winmar for labor and materials provided for the benefit of Messrs. Kasemir and Greenfield.

2.      In the alternative, this is an action to have Mr. Greenfield held liable for a December 13, 2013, Judgment obtained by Winmar against Restaurants-America





1

Consulting Group, Inc. ("RACGI")—a misnomer for "Restaurants America"—in this Court (Honorable Craig Iscoe) in Case No. 2013 CA 004869 B (the "Judgment").

## JURISDICTION

3.     The Contract underlying this dispute specifies "[t]he Contract shall be governed by the law of the place where the Project is located." Standard Form Agreement Between Owner ["Restaurants America"] and Contractor ["Winmar Construction, Inc."], Document A105 -2007 (January 24, 2013) (the "Winmar Contract" or "the Contract"), § 15.3 Governing Law, attached as Exhibit A. The place where the Project is located is Washington, DC, and thus, the laws of the District of Columbia govern the Contract.

4.     This Court has jurisdiction over the subject matter of this Complaint under D.C. Code §11-921 and jurisdiction over the parties according to D.C Code § 13-423.

5.     Venue is appropriate in this Court because the events underlying the causes of action in this Complaint occurred in the District of Columbia.

## THE PARTIES

6.     Plaintiff Winmar is a corporation organized and existing under the laws of the District of Columbia. Its principal place of business is located at 1010 Wisconsin Avenue, NW, Washington, DC 20007. Winmar served as the general contractor for the construction of a build-out of space to be used as a restaurant entitled "Townhouse Kitchen & Bar" at 700 Sixth Street, NW, Washington, DC 20001.

7.     Defendant Roger Greenfield is the sole shareholder, director, President, Secretary, and Treasurer of the RACGI. Mr. Greenfield was Winmar's primary contact with "Restaurants America" during their work on the "Townhouse Kitchen & Bar" project

pursuant to the Winmar Contract.  Mr. Greenfield's business address is 1840 Pickwick Avenue, Glenview, IL 60026.

8.      Defendant Theodore Kasemir is the signatory of the Winmar Contract. While the Contract is between Winmar and "Restaurants America," Mr. Kasemir signed the Contract personally.  Mr. Kasemir had identified himself as the "Director of Finance" for RACGI.  Mr. Kasemir's business address is 1840 Pickwick Avenue, Glenview, IL 60026.

## BACKGROUND

9.      On January 24, 2013, Winmar entered into a contract, as general contractor, for the construction of a build-out of space in a large office building to be used as a restaurant entitled "Townhouse Kitchen & Bar" at 700 Sixth Street, NW, Washington, DC 20001. *See* Exhibit A.

10.      "Townhouse DC LLC," an entity owned and operated by Mr. Greenfield, with Mr. Kasemir listed as its registered agent in Illinois, obtained a lease from USAA Real Estate Company ("USAA"), owner of 700 Sixth Street, for the intended restaurant space.

11.      "Concepts America, Inc.," yet another entity owned and operated by Mr. Greenfield, with Mr. Kasemir listed as its secretary in Illinois, guaranteed the lease for the space.

12.      Concepts America, Inc. and Townhouse DC LLC are two of nearly 400 corporate entities Mr. Greenfield has incorporated or has purported to have owned, served as president or sole shareholder of, or managed with Mr. Kasemir.

13.      Winmar began work on the Project as required by the Contract, including several change work orders requested by Mr. Greenfield.

3

14.     Winmar stopped work on the Project on May 10, 2013, due to Messrs. Greenfield's and Kasemir's failure to make payment to Winmar under the terms of the Contract, issuing a Stop Work Order giving notice to "Restaurants America" that it had failed to make payment under the contract and that Winmar was exercising its right to terminate the Contract and recover payment from "Restaurants America." The Stop Work Order is addressed to Mr. Greenfield, the "Owner" of "Restaurants America."

15.     In the weeks following the stop work order, Messrs. Greenfield and Kasemir communicated to Winmar, on behalf of "Restaurants America," that payment would be forthcoming and, alternately, that their ability to make payment depended on work continuing so that the restaurant could open.

16.     Mr. Greenfield even attempted to settle the dispute with Winmar, but did not respond meaningfully to a counter-proposal from Winmar insisting that any settlement entail full reimbursement for resources and work already expended.

17.     On July 17, 2013, Winmar filed a complaint in this Court (Case No. 2013 CA 004869 B) seeking $575,732.20 in damages against "Restaurants-America Consulting Group, Inc. d/b/a Restaurants America" asserting breach of contract, quantum meruit, and unjust enrichment claims.

18.     Neither Mr. Greenfield nor Mr. Kasemir ever disclosed to Winmar that RACGI was not validly doing business as Restaurants America at any relevant time, including when Mr. Kasemir signed the Contract with Winmar, and when Winmar filed suit against RACGI d/b/a Restaurants America.

19.    Messrs. Greenfield and Kasemir declined to respond to Winmar's Complaint, resulting in this Court entering Judgment against "Restaurants-America Consulting Group, Inc. d/b/a Restaurants America."

20.    On December 13, 2013, this Court granted Winmar Construction Inc.'s Renewed Motion for Default Judgment, entering Judgment in favor of Winmar against "Restaurants-America Consulting Group, Inc. d/b/a Restaurants America" in the amount of $575,732.20, plus pre- and post-judgment interest at the rate of 6% per annum from May 10, 2013 until the judgment is paid in full.   In this lawsuit, Winmar seeks the same amount, including such pre- and post-judgment interest, as awarded to Winmar in Case No. 2013 CA 004869 B.

21.    On February 25, 2014, the Judgment of this Court was registered in the Circuit Court of Cook County, Illinois.  The Cook County Circuit Court issued a citation to discover assets of RACGI.  Mr. Kasemir responded to that citation on behalf of RACGI. Exhibit B, Response By Citation Respondent RACGI To Plaintiff's Citation To Discover Assets.

22.    Mr. Kasemir was identified as the "Director of Finance" for RACGI. Pursuant to the Illinois court's citation, an examination of Mr. Kasemir was conducted on June 9, 2014.

23.    Winmar's examination of Mr. Theodore Kasemir revealed that RACGI is an Illinois corporation never having done any business anywhere, including the District of Columbia.

24.    Mr. Kasemir revealed that RACGI, formed in 2006, had never held any bank accounts, never employed any employees, never filed tax returns of any kind, never

obtained clients or received income of any kind, never held any ownership interest in any

property, and never owned or leased any computer equipment or software.

25.     Mr. Greenfield is listed as the sole shareholder, director, President,

Secretary, and Treasurer of the entity.     Exhibit C, RACGI Unanimous Consent of the

Board of Directors and Preoroanization (sic) Subscription Agreement (Listing Mr.

Greenfield as the sole shareholder, director, President, Secretary, and Treasurer.)

26.     Winmar has since discovered that "Restaurants America," the name listed

on the Winmar Contract signed by Mr. Kasemir, has never been a registered trade name in

the District of Columbia – and was not a registered trade name in Illinois when Mr. Kasemir

signed the Winmar Contract or when Winmar sued RACGI.

**COUNT ONE**

**BREACH OF CONTRACT AS TO THEODORE KASEMIR**

27.     The allegations contains in Paragraphs 1 through 26 are hereby incorporated

as if fully restated herein.

28.     Mr. Kasemir is personally liable on the Contract he signed in his name on

January 24, 2013 on behalf of "Restaurants America," an unregistered trade name.

29.     Mr. Kasemir's failure to comply with the Contract he signed on January 24,

2013 under the unregistered trade name "Restaurants America" has caused Winmar to

suffer the amount of damages previously determined by this Court in Case No. 2013 CA

004869B (*i.e.*, $575,732.20, plus pre- and post-judgment interest at the rate of 6% per

annum from May 10, 2013 until the judgment is paid in full).  A true and correct copy of

the Contract is attached hereto as Exhibit A.

30.     On December 29, 2006, Mr. Greenfield filed an application with the Illinois Secretary of State for the shell entity RACGI to "adopt and transact business under the assumed corporate name of:  Restaurants America."  December 29, 2006, Application to Adopt, Change or Cancel an Assumed Corporate Name, attached as Exhibit D.

31.     However, on June 1, 2009, Mr. Greenfield signed and filed with the Illinois Secretary of State an application for RACGI to voluntarily cancel its previous use of the trade name "Restaurants - America."  *See* June 1, 2009, Application to Adopt, Change or Cancel an Assumed Corporate Name, attached as Exhibit E.

32.     On July 18, 2013, one day after the Complaint was filed in Case No. 2013 CA 004869 B, and approximately six months after Mr. Kasemir signed the Winmar Contract, RACGI filed an application with the Illinois Secretary of State to re-register "Restaurants - America" as its trade name.  *See* July 18, 2013, Application to Adopt an Assumed Corporate Name, attached as Exhibit F.

33.     On neither January 24, 2013, when Mr. Kasemir signed the Contract with Winmar, nor on July 17, 2013, when Winmar filed the Complaint in Case No. 2013 CA 004869 B against RACGI, was "Restaurants America" an incorporated entity of any kind or a registered trade or assumed business name for RACGI in either the District of Columbia or Illinois.  And that remains true in the District of Columbia as of the day this Complaint is filed (November 11, 2014).

34.     In the District of Columbia, it is illegal, and a class 3 infraction, to fail to register a trade name with the D.C. Department of Consumer and Regulatory Affairs. CDCR 16-3302.2(b) (2014); D.C. Official Code § 47-2855.02 (2005 Repl.).  The illegality of an entity's trade name does not, however, "impair the validity of any contract or act of

such person or persons and shall not prevent such person or persons from defending any suit in any court of the District." D.C. Reg. 17-8908.2 (2002).

35.   In proceedings pursuant to an unrelated bankruptcy proceeding, on July 16, 2007 Mr. Greenfield stated, in sworn deposition testimony, that "Restaurants America" was not any sort of entity.

> Q: "So it's your testimony that Restaurants America, in your mind, is nothing more than a website and frequent diner program; is that Correct?"
>
> A: Correct.
>
> Q: Do you know if Rachel Dennis has ever held herself out as general counsel and vice president of Restaurants America?
>
> A: If she did, I don't know.  It's not a corporation, so I don't know how she can be president or vice president or anything.
> . . .

*In Re Restaurant Development Group v. Paloian*, Case No. 07-00937 (N.D. Ill. Bankr. 2009), Deposition of Mr. Greenfield, Doc. 229-7, pg. 331-332, excerpt attached as Exhibit G).  Mr. Greenfield also stated in his deposition that RACGI is not "Restaurants America." *Id.* at pg. 71.

WHEREFORE, Winmar respectfully prays this Honorable Court enter judgment against Defendant Theodore Kasemir for Breach of Contract, in the amount of Five Hundred Seventy-Five Thousand, Seven Hundred Thirty-Two and 20/100 Dollars ($575,732.20), plus interest, as set forth in the Judgment.

## COUNT TWO

### QUANTUM MERUIT AS TO THEODORE KASEMIR AND ROGER GREENFIELD

36.     The allegations contained in Paragraphs 1 through 35 are hereby incorporated as if fully restated herein.

37.     Winmar supplied labor and materials for the construction of the Project at the knowledge and request of, and for the benefit of, Messrs. Kasemir and Greenfield.

38.     Messrs. Greenfield and Kasemir knew or should have known that Winmar had the expectation of reimbursement and payment for the work performed on, and materials furnished to, the Project.

39.     The value of said labor and materials, less all payments received by Winmar is, at least, Five Hundred Seventy-Five Thousand, Seven Hundred Thirty-Two and 20/100 Dollars ($575,732.20), plus interest as set forth in the Judgment.

WHEREFORE, Winmar respectfully prays this Honorable Court enter judgment against Defendants Theodore Kasemir and Roger Greenfield, jointly and severally, for Quantum Meruit, in the amount of Five Hundred Seventy-Five Thousand, Seven Hundred Thirty-Two and 20/100 Dollars ($575,732.20), plus interest, as set forth in the Judgment.

## COUNT THREE

### ACTION TO HOLD ROGER GREENFIELD LIABLE ON THE DECEMBER 13, 2013 JUDGMENT OF THIS COURT AGAINST RESTAURANTS-AMERICA CONSULTING GROUP, INC.

40.     The allegations contained in Paragraphs 1 through 39 are hereby incorporated as if fully restated herein.

41.     In the alternative, Winmar asks this Court to hold Mr. Greenfield liable on the Judgment of this Court against "Restaurants-America Consulting Group, Inc."—the misnomer entity currently identified as the judgment debtor in the Judgment.

42.     According to the corporate formation documents of RACGI, Mr. Greenfield is variously identified as the owner, president, sole shareholder, secretary, and treasurer of the entity.  Exhibit C.

43.     RACGI has never been capitalized and is not operated separate and apart in any way from Mr. Greenfield.

WHEREFORE, Winmar respectfully prays this Honorable Court to hold Roger Greenfield fully liable on the December 13, 2013, Judgment of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Winmar requests that a judgment be entered in its favor as follows:

1) In Count One, compensatory damages against Defendant Theodore Kasemir for Breach of Contract, in the amount of Five Hundred Seventy-Five Thousand, Seven Hundred Thirty-Two and 20/100 Dollars ($575,732.20), plus interest, as set forth in the Judgment.

2) In Count Two, compensatory damages against Defendants Theodore Kasemir and Roger Greenfield, jointly and severally, for Quantum Meruit, in the amount of Five Hundred Seventy-Five Thousand, Seven Hundred Thirty-Two and 20/100 Dollars ($575,732.20), plus interest, as set forth in the Judgment.

3) In Count Three, judgment against Defendant Roger Greenfield holding Mr. Greenfield fully liable on the December 13, 2013, Judgment of this Court.

Dated: November 11, 2014                    Respectfully submitted,


                                            Charles H. Camp (DC Bar No. 413575)
                                            Theresa B. Bowman (DC Bar No. 1012776)
                                            Law Offices of Charles H. Camp, P.C.
                                            1025 Thomas Jefferson Street, NW
                                            Suite 115G
                                            Washington, DC 20007
                                            Tel: 202.457.7786
                                            Fax: 202.457.7788
                                            Email:  ccamp@charlescamplaw.com

                                            *Counsel for Winmar Construction, Inc.*

## **JURY DEMAND**

Pursuant to Rule 38, Plaintiff Winmar Construction, Inc. hereby demands trial by jury of any issue triable by right.

Respectfully submitted,

Charles H. Camp (DC Bar No. 413575)
Theresa B. Bowman (DC Bar No. 1012776)
Law Offices of Charles H. Camp, P.C.
1025 Thomas Jefferson Street, NW
Suite 115G
Washington, DC 20007
Tel: 202.457.7786
Fax: 202.457.7788
Email:  ccamp@charlescamplaw.com

***Counsel for Winmar Construction, Inc.***

# EXHIBIT A



# ▲AIA® Document A105™ - 2007

## Standard Form of Agreement Between Owner and Contractor *for a Small Commercial Project*

**AGREEMENT** made as of the 24th day of January in the year Two Thousand Thirteen
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Restaurants America
1840 Pickwick Lane
Glenview, IL 60026
Ph: 847.510.2500

and the Contractor:
*(Name, legal status, address and other information)*

Winmar Construction, Inc.
1010 Wisconsin Ave, NW
Suite 303
Washington, DC 20007
Ph: 202.464.8750

for the following Project:
*(Name, location and detailed description)*

Townhouse Restaurant, DC
700 6th Street NW
Washington, DC 20001

The Architect:
*(Name, legal status, address and other information)*

Knauer Architects
720 Waukegan Road, Suite 200
Deerfield, IL
Ph: 847.948.6005

The Owner and Contractor agree as follows.

ADDITIONS AND DELETIONS:
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

State or local law may impose requirements on contracts for home improvements. If this document will be used for Work on the Owners residence, the Owner should consult local authorities or an attorney to verify requirements applicable to this agreement.

AIA Document A105™ – 2007 (formerly A105™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at on under Order No. 7292361108_1 which expires on 09/22/2013, and is not for resale.
User Notes: (1432) (4.1)

## TABLE OF ARTICLES

1    THE CONTRACT DOCUMENTS

2    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION DATE

3    CONTRACT SUM

4    PAYMENT

5    INSURANCE

6    GENERAL PROVISIONS

7    OWNER

8    CONTRACTOR

9    ARCHITECT

10    CHANGES IN THE WORK

11    TIME

12    PAYMENTS AND COMPLETION

13    PROTECTION OF PERSONS AND PROPERTY

14    CORRECTION OF WORK

15    MISCELLANEOUS PROVISIONS

16    TERMINATION OF THE CONTRACT

17    OTHER TERMS AND CONDITIONS

**ARTICLE 1 THE CONTRACT DOCUMENTS**
§ 1.1 The Contractor shall complete the Work described in the Contract Documents for the Project. The Contract Documents consist of
.1    this Agreement signed by the Owner and Contractor;
.2    the drawings and specifications prepared by the Architect, dated , and enumerated as follows:

Drawings:

| Number | Title | Date |
| --- | --- | --- |
| Knauer | Cover Sheet | 5/22/2012 |

.3 addenda prepared by the Architect as follows:

AIA Document A105™ – 2007 (formerly A105™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software under Order No.9272367109_1 which expires on 38/07/2011, and is not for resale.
User Notes:                                                                                                                        (1733717064)

| Number | Title | | Date |
|--------|-------|--|------|
| | | | |

ADDENDA

*.4*   written orders for changes in the Work issued after execution of this Agreement; and

.5   other documents, if any, identified as follows:

## ARTICLE 2 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

The number of calendar days available to the Contractor to substantially complete the Work is the Contract Time. The date of commencement of the Work shall be the date of this Agreement unless otherwise indicated below. The Contractor shall substantially complete the Work, no later than  (30) weeks from the date of  commencement, subject to adjustment as provided in Article 10 and Article 11.
*(Insert the date of commencement, if it differs from the date of this Agreement.)*
Date of Commencement shall be: 1.14.2013
Substantial Completion is scheduled for: 4.9.2013

## ARTICLE 3 CONTRACT SUM

§ 3.1 Subject to additions and deductions in accordance with Article 10, the Contract Sum is:

 One Million Twenty Four, & Eight Hundred Twenty Four Dollars & 00/100 ($1,024,824.00)

§ 3.2 For purposes of payment, the Contract Sum includes the following values related to portions of the Work:
*(Itemize the Contract Sum among the major portions of the Work.)*

**Portion of Work**                                 **Value**
Refer to Exhibit B – Bid Statement Of Values

§ 3.3 Unit prices, if any, are as follows:
*(Identify and state the unit price; state the quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price per Unit ($0.00) |
|------|-----------------------|------------------------|

Alternates & Change Orders to all work including Mechanical, Electrical, Plumbing systems may be installed by Contractor, with Owners' approval at cost plus 10% mark up & 5% Fee.

§ 3.4 Allowances included in the Contract Sum, if any, are as follows: *(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | | Price |
|------|--|-------|

§ 3.5 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

AIA Document A101™ – 2007 (formerly A101™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:00:00 on 00/00/0000 under Order No.1272361092_1 which expires on 00/07/2011, and is not for resale.
User Notes:                                                                                          (1937517251)

§ 3.6 The Contract Sum shall include all items and services necessary for the proper execution and completion of the Work.

## ARTICLE 4 PAYMENT

§ 4.1 Based on Contractor's Applications for Payment certified by the Architect, the Owner shall pay the Contractor, in accordance with Article 12, as follows:
*(Insert below timing for payments and provisions for withholding retainage, if any.)*

Owner shall pay contractor for Work in place, deposits required, or stored per Article 12, within 30 days from receipt of Application. Specific deposit amounts required may be issued sooner to maintain schedule. Owner may withhold 10% of each Application value as Retention until such time as the project has achieved final inspections or substantial completion of the Work; at which time Owner shall have thirty (30) days to release retained funds.

§ 4.2 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate below, or in the absence thereof, at the legal rate prevailing at the place of the Project.

## ARTICLE 5 INSURANCE

§ 5.1 The Contractor shall provide Contractor's general liability and other insurance as follows: *(Insert specific insurance requirements and limits.)*

Type of insurance          Limit of liability ($0.00)

Contractor shall provide CGL Umbrella Insurance in an amount of no less than $5,000,000.00.

§ 5.2 The Owner shall provide property insurance to cover the value of the Owner's property, including any Work provided under this Agreement. The Contractor is entitled to receive an increase in the Contract Sum equal to the insurance proceeds related to a loss for damage to the Work covered by the Owner's property insurance.

§ 5.3 The Contractor shall obtain an endorsement to its general liability insurance policy to cover the Contractor's obligations under Section 8.12.

§ 5.4 Each party shall provide certificates of insurance showing their respective coverages prior to commencement of the Work.

§ 5.5 Unless specifically precluded by the Owner's property insurance policy, the Owner and Contractor waive all rights against (1) each other and any of their subcontractors, suppliers, agents and employees, each of the other; and (2) the Architect, Architect's consultants and any of their agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other insurance applicable to the Work.

## ARTICLE 6 GENERAL PROVISIONS
### § 6.1 THE CONTRACT
The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a written modification in accordance with Article 10.

### § 6.2 THE WORK
The term "Work" means the construction and services required by the Contract Documents, and includes all other

AIA Document A105™ – 2007 (formerly A105™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:00 under Order No.52720614103_1 which expires on 09/23/2021, and is not for resale.
User Notes:                                                                                                            (1311/132441)

labor, materials, equipment and services provided, or to be provided, by the Contractor to fulfill the Contractor's obligations.

### § 6.3 INTENT

The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all.

### § 6.4 OWNERSHIP AND USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

Documents prepared by the Architect are instruments of the Architect's service for use solely with respect to this Project. The Architect shall retain all common law, statutory and other reserved rights, including the copyright. The Contractor, subcontractors, sub-subcontractors, and material or equipment suppliers are authorized to use and reproduce the instruments of service solely and exclusively for execution of the Work. The instruments of service may not be used for other Projects or for additions to this Project outside the scope of the Work without the specific written consent of the Architect.

## ARTICLE 7 OWNER
### § 7.1 INFORMATION AND SERVICES REQUIRED OF THE OWNER

§ 7.1.1 If requested by the Contractor, the Owner shall furnish all necessary surveys and a legal description of the site.

§ 7.1.2 Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, the Owner shall obtain and pay for other necessary approvals, easements, assessments and charges.

### § 7.2 OWNER'S RIGHT TO STOP THE WORK

If the Contractor fails to correct Work which is not in accordance with the Contract Documents, the Owner may direct the Contractor in writing to stop the Work until the correction is made.

### § 7.3 OWNER'S RIGHT TO CARRY OUT THE WORK

If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies, correct such deficiencies. In such case, the Contract Sum shall be adjusted to deduct the cost of correction from payments due the Contractor.

### § 7.4 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

§ 7.4.1 The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project.

§ 7.4.2 The Contractor shall coordinate and cooperate with the Owner's own forces and separate contractors employed by the Owner.

§ 7.4.3 Costs caused by delays or by improperly timed activities or defective construction shall be borne by the party responsible therefor.

## ARTICLE 8 CONTRACTOR
### § 8.1 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

§ 8.1.1 Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

§ 8.1.2 The Contractor shall carefully study and compare the Contract Documents with each other and with

AIA Document A105™ – 2007 (formerly A105™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:43:07 on 03/07/2011 under Order No.0241264606_1 which expires on 09/07/2011, and is not for resale.
User Notes:                                                                                      (2111204.5)

information furnished by the Owner. Before commencing activities, the Contractor shall (1) take field measurements and verify field conditions; (2) carefully compare this and other information known to the Contractor with the Contract Documents; and (3) promptly report errors, inconsistencies or omissions discovered to the Architect.

## § 8.2 CONTRACTOR'S CONSTRUCTION SCHEDULE

The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work.

## § 8.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 8.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Work.

§ 8.3.2 The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of subcontractors or suppliers for each portion of the Work. The Contractor shall not contract with any subcontractor or supplier to whom the Owner or Architect have made a timely and reasonable objection.

## § 8.4 LABOR AND MATERIALS

§ 8.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work.

§ 8.4.2 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract Work. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

## § 8.5 WARRANTY

The Contractor warrants to the Owner and Architect that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract Documents; (2) the Work will be free from defects not inherent in the quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

## § 8.6 TAXES

The Contractor shall pay sales, consumer, use and similar taxes that are legally required when the Contract is executed.

## § 8.7 PERMITS, FEES AND NOTICES

§ 8.7.1 The Contractor shall obtain and pay for the ~~building permit and other~~ Trade permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work. Tap fees, assessment fees, connection fees, etc., shall be the responsibility of Owner.

§ 8.7.2 The Contractor shall comply with and give notices required by agencies having jurisdiction over the Work. If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume full responsibility for such Work and shall bear the attributable costs. The Contractor shall promptly notify the Architect in writing of any known inconsistencies in the Contract Documents with such governmental laws, rules and regulations.

## § 8.8 SUBMITTALS

The Contractor shall promptly review, approve in writing and submit to the Architect Shop Drawings, Product Data,

AIA Document A105TM – 2007 (formerly A105TM – 1993 and A205TM – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 00:00:00 on 00/00/0000 under Order No.0000000000_0 which expires on 00/00/0000, and is not for resale.
User Notes:                                                                    (0000000000)

Samples and similar submittals required by the Contract Documents. Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents.

### § 8.9 USE OF SITE
The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits, the Contract Documents and the Owner.

### § 8.10 CUTTING AND PATCHING
The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

### § 8.11 CLEANING UP
The Contractor shall keep the premises and surrounding area free from accumulation of debris and trash related to the Work. At the completion of the Work, the Contractor shall remove its tools, construction equipment, machinery and surplus material; and shall properly dispose of waste materials.

### § 8.12 INDEMNIFICATION
To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

### ARTICLE 9 ARCHITECT
**§ 9.1** The Architect will provide administration of the Contract as described in the Contract Documents. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**§ 9.2** The Architect will visit the site at intervals appropriate to the stage of construction to become generally familiar with the progress and quality of the Work.

**§ 9.3** The Architect will not have control over or charge of, and will not be responsible for, construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility. The Architect will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents.

**§ 9.4** Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor.

**§ 9.5** The Architect has authority to reject Work that does not conform to the Contract Documents.

**§ 9.6** The Architect will promptly review and approve or take appropriate action upon Contractor's submittals, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.

**§ 9.7** The Architect will promptly interpret and decide matters concerning performance under the Contract Documents on written request from either the Owner or Contractor.

**§ 9.8** Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not

AIA Document A105™ – 2007 (formerly A105™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:43:10 on 05/07/2014 under Order No.5507959129_1 which expires on 03/07/2015, and is not for resale.
User Notes:                                                                                                                           (1313171811)

show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

§ 9.9 The Architect's duties, responsibilities and limits of authority as described in the Contract Documents shall not be changed without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

## ARTICLE 10 CHANGES IN THE WORK

§ 10.1 The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly in writing. If the Owner and Contractor cannot agree to a change in the Contract Sum, the Owner shall pay the Contractor its actual cost plus reasonable overhead and profit.

§ 10.2 The Architect will have authority to order minor changes in the Work not involving changes in the Contract Sum or the Contract Time and not inconsistent with the intent of the Contract Documents. Such orders shall be in writing and shall be binding on the Owner and Contractor. The Contractor shall carry out such orders promptly.

§ 10.3 If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Documents or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be subject to equitable adjustment.

## ARTICLE 11 TIME

§ 11.1 Time limits stated in the Contract Documents are of the essence of the Contract.

§ 11.2 If the Contractor is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, the Contract Time shall be subject to equitable adjustment.

## ARTICLE 12 PAYMENTS AND COMPLETION
### § 12.1 CONTRACT SUM
The Contract Sum stated in the Agreement, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### § 12.2 APPLICATIONS FOR PAYMENT
§ 12.2.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for Work completed in accordance with the values stated in the Agreement. Such Application shall be supported by data substantiating the Contractor's right to payment as the Owner or Architect may reasonably require. Payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment stored, and protected from damage, off the site at a location agreed upon in writing.

§ 12.2.2 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment, all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or other encumbrances adverse to the Owner's interests.

### § 12.3 CERTIFICATES FOR PAYMENT
The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part.

AIA Document A107™ - 2007 (formerly A105™ - 1993 and A205™ - 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:00:00 on 00/00/0000 under Order No.5027761109_1 which expires on 08/07/2013, and is not for resale.
User Notes:                                                                                          (1512119511)

## § 12.4 PROGRESS PAYMENTS

§ 12.4.1 After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner provided in the Contract Documents.    *⅓ at 33% Completion     ⅓ at 50% Completion*
*Remainder On CPO within 30 days*
*TL*

§ 12.4.2 The Contractor shall promptly pay each subcontractor and supplier, upon receipt of payment from the Owner, an amount determined in accordance with the terms of the applicable subcontracts and purchase orders.

§ 12.4.3 Neither the Owner nor the Architect shall have responsibility for payments to a subcontractor or supplier.

§ 12.4.4 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the requirements of the Contract Documents.

## § 12.5 SUBSTANTIAL COMPLETION

§ 12.5.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use.

§ 12.5.2 When the Work or designated portion thereof is substantially complete, the Architect will make an inspection to determine whether the Work is substantially complete. When the Architect determines that the Work is substantially complete the Architect shall prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish the responsibilities of the Owner and Contractor, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

## § 12.6 FINAL COMPLETION AND FINAL PAYMENT

§ 12.6.1 Upon receipt of a final Application for Payment, the Architect will inspect the Work. When the Architect finds the Work acceptable and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment.

§ 12.6.2 Final payment shall not become due until the Contractor submits to the Architect releases and conditional waivers of liens, and data establishing payment or satisfaction of obligations, such as receipts, claims, security interests or encumbrances arising out of the Contract.

§ 12.6.3 Acceptance of final payment by the Contractor, a subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.


## ARTICLE 13 PROTECTION OF PERSONS AND PROPERTY

The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs, including all those required by law in connection with performance of the Contract. The Contractor shall take reasonable precautions to prevent damage, injury or loss to employees on the Work, the Work and materials and equipment to be incorporated therein, and other property at the site or adjacent thereto. The Contractor shall promptly remedy damage and loss to property caused in whole or in part by the Contractor, or by anyone for whose acts the Contractor may be liable.

## ARTICLE 14 CORRECTION OF WORK

§ 14.1 The Contractor shall promptly correct Work rejected by the Architect as failing to conform to the requirements of the Contract Documents. The Contractor shall bear the cost of correcting such rejected Work, including the costs of uncovering, replacement and additional testing.

AIA Document A105™ – 2007 (formerly A105™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 00:00:00 on 01/01/0000 under Order No.0000000000 which expires on 00/00/0000, and is not for resale.
User Notes:                                                                                                                  (1733170671)

§ 14.2 In addition to the Contractor's other obligations including warranties under the Contract, the Contractor shall, for a period of one year after Substantial Completion, correct work not conforming to the requirements of the Contract Documents.

§ 14.3 If the Contractor fails to correct nonconforming Work within a reasonable time, the Owner may correct it in accordance with Section 7.3.

## ARTICLE 15 MISCELLANEOUS PROVISIONS
### § 15.1 ASSIGNMENT OF CONTRACT
Neither party to the Contract shall assign the Contract as a whole without written consent of the other.

### § 15.2 TESTS AND INSPECTIONS
§ 15.2.1 At the appropriate times, the Contractor shall arrange and bear cost of tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities.

§ 15.2.2 If the Architect requires additional testing, the Contractor shall perform those tests.

§ 15.2.3 The Owner shall bear cost of tests, inspections or approvals that do not become requirements until after the Contract is executed.

### § 15.3 GOVERNING LAW
The Contract shall be governed by the law of the place where the Project is located.

## ARTICLE 16 TERMINATION OF THE CONTRACT
### § 16.1 TERMINATION BY THE CONTRACTOR
If the Architect fails to certify payment as provided in Section 12.3 for a period of 30 days through no fault of the Contractor, or if the Owner fails to make payment as provided in Section 12.4.1 for a period of 30 days, the Contractor may, upon seven additional days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed including reasonable overhead and profit, and costs incurred by reason of such termination.

### § 16.2 TERMINATION BY THE OWNER FOR CAUSE
§ 16.2.1 The Owner may terminate the Contract if the Contractor

.1    repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
.2    fails to make payment to subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the subcontractors;
.3    persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or
.4    is otherwise guilty of substantial breach of a provision of the Contract Documents.

§ 16.2.2 When any of the above reasons exist, the Owner, after consultation with the Architect, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may

.1 take possession of the site and of all materials thereon owned by the Contractor, and
.2 finish the Work by whatever reasonable method the Owner may deem expedient.

§ 16.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 16.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ 16.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, such excess shall be paid to the Contractor. If such costs exceed the unpaid balance, the Contractor shall pay the difference to the Owner. This obligation for payment shall survive termination of the Contract.

AIA Document A105™ – 2007 (formerly A105™ – 1993 and A205™ – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at order No.5077051155_1 which expires on 09/27/2011, and is not for resale.
User Notes:    (1937371CA)

### § 16.3 TERMINATION BY THE OWNER FOR CONVENIENCE

The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause. The Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

**ARTICLE 17 OTHER TERMS AND CONDITIONS** *(Insert any other terms or conditions below.)*

This Agreement entered into as of the day and year first written above.
*(If required by law, insert cancellation period, disclosures or other warning statements above the signatures.)*

_____
**OWNER** *(Signature)*

_____

_____
*(Printed name, title and address)*


_____
**CONTRACTOR** *(Signature)*


Jason E. Wilt
VP, Project Development
Winmar Construction, Inc.
1010 Wisconsin Ave, NW
Suite 303
Washington DC 20007_____

_____
*(Printed name, title and address)*

AIA Document A105BM – 2007 (formerly A105BM – 1993 and A205BM – 1993). Copyright © 1993 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software under license No.5272361109_1 which expires on 09/27/2011, and is not for resale.
User Notes:                                                                                          (1733717061)

# EXHIBIT B

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DISTRICT

WINMAR CONSTRUCTION, INC. )
                                      )
         Plaintiff, )
                                      )
      v. )     Case No. 14 L 50177
                                      )
RESTAURANTS-AMERICA CONSULTING )
GROUP INC., )
                                      )
        ' Defendant. )
                                      )

## RESPONSE BY CITATION RESPONDENT RESTAURANTS-AMERICA CONSULTING GROUP, INC. TO PLAINTIFF'S CITATION TO DISCOVER ASSETS

Now comes judgment debtor and citation respondent Restaurants-America Consulting Group, Inc., by Robbins, Salomon & Patt, Ltd., its attorneys, per Richard Lee Stavins, attorney at law, and for its response to the citation to discover assets issued on March 4, 2014, says as follows:

    1.    United States income tax returns for the past 5 years.

**RESPONSE:**  None


    2.    Leases on business premises.

**RESPONSE:** None


    3.    Financial statements prepared by accountants.

**RESPONSE:**  None


    4.    Current account receivables records.

**RESPONSE:**  None

5. Title documents relating to any real estate or interest in land trusts.

**RESPONSE:** None

6. Bank account statements for the last 12 months.

**RESPONSE:** None

7. Corporate Minute Book, including Corporate Charter and Corporation By-Laws.

**RESPONSE:** Attached.

8. Credit Card Clearinghouse information for any and all credit cards accepted by the judgment debtor in the course of its regularly conducted business activity.

**RESPONSE:** None

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth herein are true and correct.

Theodore Kasemir, on behalf of
Restaurants-America Consulting Group, Inc.

Richard Lee Stavins
**ROBBINS, SALOMON & PATT, LTD.**
Attorneys for Defendant
180 North LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000
Attorney No. 80919

JN3909                                    2

# EXHIBIT C

## UNANIMOUS CONSENT OF
## THE BOARD OF DIRECTORS OF
## RESTAURANTS-AMERICA CONSULTING GROUP, INC.

The undersigned, being all of the directors of Restaurants-America Consulting Group, Inc., an Illinois corporation (the "Corporation"), pursuant to Section 8.45 of the Illinois Business Corporation Act of 1983, as amended, hereby waive notice of the annual meeting of the directors of the Corporation, and do hereby consent in writing to the adoption of the following resolutions:

**RESOLVED,**   that all actions taken, all contracts entered into and all matters accomplished by the officers of the Corporation in the general conduct of business of the Corporation, from the date of the last annual meeting of the Board of Directors to the present, shall be, and they hereby are in all respects, fully approved, adopted, ratified and confirmed.

**FURTHER RESOLVED,** that the following persons be, and they hereby are elected to the offices of the Corporation set opposite their names, to until the next annual meeting of the Board of Directors, or until their successors are elected and shall qualify:

Roger Greenfield                    President/Secretary/Treasurer

Dated: July 11, 2008                        *s/s Roger Greenfield*
                                            Roger Greenfield

                                            Being the Sole Director of the Corporation

PREOROANIZATION SUBSCRIPTION AGREEMENT
RESTAURANTS-AMERICA CONSULTING GROUP, INC.
(an Illinois corporation)

WHEREAS. it is proposed to organize a corporation under the Illinois Business Corporation Act of 1983 to be known as RESTAURANTS-AMERICA CONSULTING GROUP, INC., INC..;

WHEREAS, the corporation shall be authorized to issue 10,000 shares of no par value common stock; and

WHEREAS, it is proposed that the corporation shall be organized with the broadest purposes clause possible.

NOW, THEREFORE, the undersigned subscribes to the number of common shares of the proposed corporation set forth below and agrees to pay therefore the sum of One Dollar ($1.00) per share:

| Subscriber | Number of Shares | Consideration |
|---|---|---|
| Roger Greenfield | 1.000 | $1,000.00 |

This subscription shall be payable at such time or times as the Board of Directors may determine and shall be paid in cash or such other assets as the Board of Directors may determine. The undersigned hereby assigns to  Rachel Dennis , as nominee, the authority to act as incorporator of said corporation, and, as such to execute and file Articles of Incorporation containing such provisions not inconsistent herewith as she shall deem advisable.

DATED: July 20, 2006

_____
Roger Greenfield

BEING THE SOLE SHAREHOLDER OF
RESTAURANTS-AMERICA CONSULTING GROUP, INC.

000435

# EXHIBIT D



# OFFICE OF THE SECRETARY OF STATE

**JESSE WHITE** • Secretary of State

DECEMBER 29, 2006                                                    6506-162-7

RACHEL DENNIS
1840 PICKWICK AVENUE
GLENVIEW, IL. 60026

RE  RESTAURANTS-AMERICA

DEAR SIR OR MADAM:

APPLICATION TO ADOPT AN ASSUMED NAME HAS BEEN PLACED ON FILE AND THE
CORPORATION CREDITED WITH THE REQUIRED FEE.

THE DUPLICATE COPY IS ENCLOSED.

SINCERELY,

JESSE WHITE
SECRETARY OF STATE
DEPARTMENT OF BUSINESS SERVICES
CORPORATION DIVISION
TELEPHONE (217) 782-6961

JW:CD

RACG000018

| Form BCA-4.15/4.20 | Application to Adopt, | File #: D65061627 |
| --- | --- | --- |

**Form BCA-4.15/4.20**
(Rev. Jan. 2003)

Secretary of State
Department of Business Services
Springfield, IL 62756
217-782-9520
www.cyberdriveillinois.com

Remit payment in the form of a check or money order, payable to Secretary of State.

**Application to Adopt, Change or Cancel an Assumed Corporate Name**

**FILED**

**DEC 2 9 2006**

JESSE WHITE
SECRETARY OF STATE

File #: D65061627
**DO NOT SEND CASH**
This space for use by Secretary of State.
Date: DEC 29, 2006
Filing Fee: $ 120 00
(See Note Below)
Approved: RB

1. Corporate Name: Restaurants - America Consulting Group, Inc

2. State or Country of Incorporation: Illinois

3. Date Incorporated (if an Illinois corporation) or Date Authorized to Transact Business in Illinois (if a foreign corporation):
   July 20                    2006 .
   Month & Day         Year

**Complete No. 4 and No. 5 if adopting or changing an assumed corporate name.**

4. Corporation intends to adopt and to transact business under the assumed corporate name of:
   Restaurants- America

5. The right to use the assumed corporate name shall be effective from the date this application is filed by the Secretary
   of State until December 13              2010 , the first day of the corporation's anniversary
              Month & Day            Year
   month in the next year evenly divisible by five.

**Complete No. 6 if changing or cancelling an assumed corporate name.**

6. Corporation intends to cease transacting business under the assumed corporate name of:
   _____
   _____

7. The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under
   penalties of perjury, that the facts stated herein are true and correct.

   Dated December 12              2006  Restaurants-America Consulting Group, Inc
             Month & Day           Year            Exact Name of Corporation

   Roger Greenfield
   Any Authorized Officer's Signature
   Name and Title (type or print)

NOTE: The filing fee to adopt an assumed corporate name is $150 if the current year ends with a 0 or 5; $120 if the current year ends with a 1 or 6; $90 if the current year ends with a 2 or 7; $60 if the current year ends with a 3 or 8; or $30 if the current year ends with a 4 or 9.

The fee for cancelling an assumed corporate name is $5.

The fee to change an assumed name is $25.

Printed by authority of the State of Illinois. June 2006 — 5M — C 146.16

RACG000019

# EXHIBIT E

*File Number*          6506-162-7



## To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that I am the keeper of the records of the Department of Business Services.  I certify that*

THE FOREGOING AND HERETO ATTACHED IS A TRUE AND CORRECT COPY, CONSISTING OF 1 PAGES, AS TAKEN FROM THE ORIGINAL ON FILE IN THIS OFFICE FOR RESTAURANTS-AMERICA CONSULTING GROUP, INC..*****************************************************



## In Testimony Whereof, *I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this* 27TH *day of* AUGUST *A.D.* 2014 .

*Jesse White*

SECRETARY OF STATE

Authentication #: 1423902235
Authenticate at: http://www.cyberdriveillinois.com


CP0832715

| Form BCA-4.15/4.20 | **Application to Adopt,** | |
|---|---|---|
| (Rev. Jan. 2003) | **Change or Cancel an** | |

**Application to Adopt, Change or Cancel an Assumed Corporate Name**

File #: 6506-162-7

**DO NOT SEND CASH**

Secretary of State
Department of Business Services
Springfield, IL  62756
217-782-9520
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order, payable to
Secretary of State.

**·FILED**

**·JUN – 1· 2009**

JESSE WHITE
SECRETARY OF STATE

This space for use by
Secretary of State.

Date:  JUNE 1, 2009

Filing Fee:  $5.00
(See Note Below)

Approved:  RB

1. Corporate Name: Restaurants-America Consulting Group, Inc.

2. State or Country of Incorporation: Illinois

3. Date Incorporated (if an Illinois corporation) or Date Authorized to Transact Business in Illinois (if a foreign corporation):

    July 20                              , 2006
    Month & Day                     Year

**Complete No. 4 and No. 5 if adopting or changing an assumed corporate name.**

4. Corporation intends to adopt and to transact business under the assumed corporate name of:

5. The right to use the assumed corporate name shall be effective from the date this application is filed by the Secretary

    of State until _____, _____, the first day of the corporation's anniversary
                    Month & Day                    Year

    month in the next year evenly divisible by five.

**Complete No. 6 if changing or cancelling an assumed corporate name.**

6. Corporation intends to cease transacting business under the assumed corporate name of:

    Restaurants-America

7. The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under
   penalties of perjury, that the facts stated herein are true and correct.

    Dated May 26                        , 2009        Restaurants-America Consulting Group, Inc.
            Month & Day                   Year                  Exact Name of Corporation

    _____
    Any Authorized Officer's Signature

    Roger Greenfield, President
    Name and Title (type or print)

PAID
JUN 0 2 2009
**DEPARTMENT OF
BUSINESS SERVICES**

**NOTE:** The filing fee to adopt an assumed corporate name is $150 if the current year ends with a 0 or 5; $120 if the cur-
rent year ends with a 1 or 6; $90 if the current year ends with a 2 or 7; $60 if the current year ends with a 3 or 8;
or $30 if the current year ends with a 4 or 9.

The fee for cancelling an assumed corporate name is $5.

The fee to change an assumed name is $25.

Printed by authority of the State of Illinois. June 2006 — 5M — C 148.16

# EXHIBIT F

| Form **BCA-4.15/4.20** | Illinois<br>**Application to Adopt an<br>Assumed Corporate Name**<br>**Business Corporation Act** | **FILE # 65061627** |
|---|---|---|
| Secretary of State<br>Department of Business Services<br>Springfield, IL 62756<br>217-782-9520<br>www.cyberdriveillinois.com | Filing Fee: **60.00**<br>Approved: **JXR** | **FILED**<br>**Jul 18, 2013**<br>**Jesse White<br>Secretary of State** |

1. Corporate Name: RESTAURANTS-AMERICA CONSULTING GROUP, INC.

2. State of Incorporation: ILLINOIS

3. Date Incorporated/Qualified: 07/20/2006

4. Corporation intends to adopt and to use the assumed corporate name of:

   RESTAURANTS-AMERICA

5. The right to use the assumed corporate name shall be effective from the date this application is filed by the Secretary of State until _____ 07/01/2015 _____, the first day of the corporation's anniversary month in the next year evenly divisible by five.

6. The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

   Date: _____ Jul 18, 2013 _____

   Exact Name of the Corporation:
   RESTAURANTS-AMERICA CONSULTING GROUP, INC.

   _____ ROGER GREENFIELD _____
   Authorized Officer's Name

   _____ PRESIDENT _____
   Title

# EXHIBIT G

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 47 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
ROGER GREENFIELD 22-24 D Page 8 of 28ULY 16, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE:                        )

RESTAURANT DEVELOPMENT GROUP,  )

INC.,                          )

              Debtor.        )


       The deposition of ROGER GREENFIELD,
called for examination, taken pursuant to the
Federal Rules of Civil Procedure of the United
States District Courts pertaining to the taking of
depositions, taken before MIGDALIA MONTERO, CSR No.
84-4383, a Notary Public within and for the County
of Cook, State of Illinois, and a Certified
Shorthand Reporter of said state, at Suite 1200, 11
South LaSalle Street, Chicago, Illinois, on the 16th
day of July, A.D. 2007, at 10:10 a.m.

ROGER GREENWALD                            JULY 16, 2007

Page 2

```
 1    PRESENT:

 2

 3         STETLER & DUFFY, LTD.,

 4         (11 South LaSalle Street, Suite 1200,

 5         Chicago, Illinois  60603,

 6         312-338-0200), by:

 7    MR. JONATHAN M. CYRLUK,

 8         appeared on behalf of the Bankruptcy

 9         Trustee, Mr. Gus A. Paloian;

10

11         CRANE, HEYMAN, SIMON, WELCH & CLAR,

12         (135 South LaSalle Street, Suite 3705,

13         Chicago, Illinois  60603,

14         312-641-6777), by:

15    MR. DAVID K. WELCH,

16         appeared on behalf of Restaurant

17         Development Group, Inc., RDG Chicago, Inc.,

18         Restaurants-America Consulting Group, Inc.

19

20    ALSO PRESENT:  MS. RACHEL DENNIS.

21

22

23    REPORTED BY:  MIGDALIA MONTERO, C.S.R.

24              Certificate No. 84-4383.
```

ROGER GREENFIELD                                JULY 16, 2007

Page 3

```
 1                  (WHEREUPON, the witness was duly

 2              sworn.)

 3                  ROGER GREENFIELD,

 4    called as a witness herein, having been first duly

 5    sworn, was examined and testified as follows:

 6                  EXAMINATION

 7    BY MR. CYRLUK:

 8        Q.    Good morning, Mr. Greenfield.  My name is

 9    John Cyrluk.  I am Special Counsel of the Trustee,

10    and we are here today pursuant to a couple of

11    things, which I'll show you, a subpoena to yourself,

12    and then I think you have been designated as the

13    person to testify on behalf of Restaurants America

14    Consulting Group, Inc. Is that correct?

15        A.    Correct.

16        Q.    Why don't we start by you stating your

17    name and spelling it for the record?

18        A.    Roger Greenfield, R-o-g-e-r,

19    G-r-e-e-n-f-i-e-l-d.

20        Q.    Have you ever had your deposition taken

21    in the past?

22        A.    Yes.

23        Q.    About how many times?

24        A.    Five or six.
```

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 50 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
ROGER GREENWALD  22-24  Page 11 of 28  JULY 16, 2007

Page 67

```
 1        Q.    Who has it ever had consulting agreements

 2   with?

 3        A.    I believe Harrah's.

 4        Q.    Harrah's Casino?

 5        A.    Yes.

 6        Q.    And what type of consulting did

 7   Restaurant Marketing, Inc., provide to Harrah's

 8   Casino?

 9        A.    It re-did a restaurant in Joliet, a

10   Joliet casino.

11        Q.    Any other consulting services that it

12   provided to Harrah's?

13        A.    No.

14        Q.    How much was Restaurant Marketing paid by

15   Harrah's Casino for doing the restaurant in Joliet?

16        A.    Yes.

17        Q.    How much was it paid?

18        A.    I don't recall.

19        Q.    More than $100,000?

20        A.    Yes.

21        Q.    More than $200,000?

22        A.    It's about somewhere in between.

23        Q.    Somewhere in between $100,000 and

24   $200,000?
```

ROGER GREENFIELD                    JULY 16, 2007

Page 68

1          A.     Right.

2          Q.     When was it paid that money from

3     Harrah's?

4          A.     Last year, the year before.

5          Q.     So either 2005 or 2006?

6          A.     Right.

7          Q.     Does Ms. Dennis get her paycheck from

8     Restaurant Marketing, Inc., today?

9          A.     I don't know.

10         Q.     Do you know who pays Ms. Dennis'

11    paychecks?

12         A.     I don't.  I don't deal with payroll.

13         Q.     Does Restaurants America have an E-mail

14    club?

15         A.     I think so, on the website.

16         Q.     Does Restaurants America have a frequent

17    diner club?

18         A.     Yes.

19         Q.     How does Restaurants America manage its

20    frequent diner club?

21         A.     I don't know that.

22         Q.     Who would know?

23         A.     Ted.

24         Q.     Anybody else besides Mr. Kasemir?

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 52 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
ROGER GREE22-24LLPage 13 of 28ULY 16, 2007

Page 69

 1      A.    No.

 2      Q.    Let's go back to the Restaurants America

 3   Consulting Group subpoena.  It's No. 9.  If you

 4   could look at the rider that's attached to Exhibit

 5   A. These are the things that you have been

 6   designated to testify on behalf of, using your

 7   terminology, Consulting Group.

 8      A.    These don't have anything to do with

 9   Consulting Group.

10      MR. WELCH:  Did I turn the wrong page?

11   BY MR. CYRLUK:

12      Q.    You are looking at the wrong page.  This

13   is Exhibit A to Exhibit No. 9.  These are the items

14   for which we requested you to testify.

15      A.    Okay.

16      Q.    Okay.  What did you do to educate

17   yourself, if anything, with respect to any of the

18   items, Number 1 through 5, on Exhibit A to Trustee's

19   Exhibit No. 9?

20      A.    I didn't do anything.

21      Q.    Did anybody ever explain to you that

22   pursuant to the federal rules, that you have an

23   obligation to educate yourself on matters that are

24   within the company's control --

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 53 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
ROGER GREE22-24LLPage 14 of 28ULY 16, 2007

Page 70

1       A.      I'm educated.

2       MR. WELCH:  Wait.  Let him finish his question.

3    Are you done?  I'm not even sure if you were done.

4    BY MR. CYRLUK:

5       Q.      Did anybody ever explain to you or

6    instruct you that you should seek information that

7    is within Restaurants America Consulting Group's

8    control to answer the matters contained on Exhibit A

9    to Trustee's Exhibit No. 9?

10      MR. WELCH:  Objection, calls for a legal

11   conclusion.  I think an answer is a legal

12   conclusion, but you may answer his question.

13   BY THE WITNESS:

14      A.      I know what Restaurants America

15   Consulting Group is, and if you want to ask me

16   question, I will tell you.

17   BY MR. CYRLUK:

18      Q.      But did you do anything, specifically

19   Number 3, business purposes and functions of

20   Restaurants America Consulting Group?  Are you

21   knowledgeable regarding the business purposes and

22   functions of Restaurants America?

23      A.      Completely.

24      Q.      Completely?  Okay.

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 54 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
ROGER GREENFIELD 22-24 Page 15 of 28 JULY 16, 2007

Page 71

1      A.    Yes.

2      Q.    In your mind, and this goes back to an

3   earlier line of questioning, is there a difference

4   between Restaurants America that's listed on the

5   website that is having a frequent diner club and an

6   E-mail club and who Mr. Goldman has got a business

7   card saying he is the controller of, and Restaurants

8   America Consulting Group, is there a difference

9   between those two things?

10     A.    Totally.

11     Q.    What's the difference?

12     A.    Restaurants America Consulting Group was

13  formed to consult to Harrah's Casino and any other

14  entities out there that may come to us, any other

15  casinos out there that may come to us for

16  consulting.  That's it.

17     Q.    What about the website --

18     A.    That's the whole purpose of the entity.

19  That's it.

20     Q.    And when was that created?

21     A.    I don't know.  You have the corporation

22  files, don't you?

23     Q.    I think it's September of '06, does that

24  sound about right, or July of '06, sometime in '06;

Page 72

1    is that a fair statement?

2        A.    Yes.

3        Q.    How long has the website indicated or

4    reflects a Restaurants America?

5        A.    I don't know.

6        Q.    Do you know what the address is for the

7    website?

8        MR. WELCH:  The E-mail address?

9        MR. CYRLUK:  No, the www dot whatever it is

10   domain name.

11   BY THE WITNESS:

12       A.    Restaurants-America.com.

13   BY MR. CYRLUK:

14       Q.    How long has that website,

15   www.Restaurants-America.com, been in existence?

16       A.    I don't know.

17       Q.    Who would know?

18       A.    However you get the website from.  I

19   don't know.

20       Q.    Within your organization, is there

21   anybody that you would ask?

22       A.    Nobody would know because nobody has been

23   there.

24       Q.    Who would you charge with the

ROGER GREENFIELD                              JULY 30, 2007

Page 250

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS


IN RE:                                )

RESTAURANT DEVELOPMENT GROUP,         )

INC.,                                 )

                    Debtor.           )


          The resumed deposition of ROGER GREENFIELD,

called for examination, taken pursuant to the

Federal Rules of Civil Procedure of the United

States District Courts pertaining to the taking of

depositions, taken before MIGDALIA MONTERO, CSR No.

84-4383, a Notary Public within and for the County

of Cook, State of Illinois, and a Certified

Shorthand Reporter of said state, at Suite 1200, 11

South LaSalle Street, Chicago, Illinois, on the 30th

day of July, A.D., 2007, at 2:31 p.m.

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 57 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
ROGER GREENFIELD   22-24   Page 18 of 29   JULY 30, 2007

Page 251

```
1    PRESENT:

2

3        STETLER & DUFFY, LTD.,

4        (11 South LaSalle Street, Suite 1200,

5        Chicago, Illinois  60603,

6        312-338-0200), by:

7        MR. JONATHAN M. CYRLUK,

8

9              -and-

10

11       LAW OFFICES OF DANIEL LYNCH,

12       (150 South LaSalle Street, Suite 2600,

13       Chicago, Illinois  60606,

14       312-346-8700), by:

15       MR. DANIEL LYNCH,

16            appeared on behalf of the Bankruptcy

17            Trustee, Mr. Gus A. Paloian;

18

19

20

21

22

23

24
```

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 58 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
22-24   Page 19 of 28
ROGER GREENFIELD                    JULY 30, 2007

Page 252

```
 1    PRESENT:

 2

 3

 4         CRANE, HEYMAN, SIMON, WELCH & CLAR,

 5         (135 South LaSalle Street, Suite 3705,

 6         Chicago, Illinois  60603,

 7         312-641-6777), by:

 8         MR. DAVID K. WELCH,

 9              appeared on behalf of Restaurant

10              Development Group, Inc., RDG Chicago, Inc.,

11              Restaurants-America Consulting Group, Inc.

12

13

14

15

16    REPORTED BY:  MIGDALIA MONTERO, C.S.R.

17              Certificate No. 84-4383.

18

19

20

21

22

23

24
```

ROGER GREENFIELD   JULY 30, 2007

Page 253

```
 1                    (WHEREUPON, the witness was duly

 2                    sworn.)

 3                        ROGER GREENFIELD,

 4     called as a witness herein, having been previously

 5     duly sworn and having testified, was examined and

 6     testified further as follows:

 7                        EXAMINATION (Resumed)

 8     BY MR. CYRLUK:

 9          Q.    Mr. Greenfield, this is your continued

10     2004 Examination, both as yourself in your

11     individual capacity, and as a designated person for

12     Restaurants America Consulting Group.  Do you

13     understand that?

14          A.    Yes, I do.

15          Q.    When we last left off, we were looking at

16     Exhibit No. 30.  Here is the original.  We were

17     speaking about the loans, various loans, that you

18     had made to various entities in which you and

19     Mr. Kasemir have an ownership interest.  Do you

20     recall that general area?

21          A.    Yes.

22          Q.    And can you take a moment and look

23     through Trustee's Exhibit No. 30 and confirm for me

24     that these are E-mails in which you either sent to
```

ROGER GREENFIELD                    JULY 30, 2007

Page 254

1    Lee Zabin or received from Lee Zabin or copied on

2    E-mails sent by or received from Lee Zabin?

3         A.    Yes, they are.

4         Q.    And if you can tell me what your practice

5    was in 2004 with respect to when you received an

6    E-mail, what would you do with it?

7         A.    I read it and delete it.

8         Q.    Is there any E-mails that you ever kept?

9         A.    No.

10        Q.    Why is it you didn't keep any E-mails?

11        A.    Why would I keep all that paper?

12        MR. WELCH:  He asks the questions, and you give

13   the answers.

14   BY THE WITNESS:

15        A.    I don't keep E-mails.  It's my practice.

16   I don't need more clutter in my office.

17   BY MR. CYRLUK:

18        Q.    What about on your computer, would you

19   keep them on your computer in electronic form so you

20   wouldn't have clutter in the form of paper?

21        A.    No.

22        Q.    Why not?

23        A.    Usually, I take care of a problem, and

24   delete it or delete itself.

ROGER GREENFIELD                    JULY 30, 2007

Page 329

1         A.    Okay.

2         Q.    Does that refresh your recollection at

3    least by September 8, '03, looking at that entry,

4    that the decision had been made to go through with

5    the reorganization of RDG?

6         A.    Yes.

7         Q.    You can put that away.  We talked a

8    little bit about Restaurants America and not

9    Restaurants America Consulting Group.  You told me

10   in your mind those are different?

11        A.    Right.

12        Q.    Do you remember that testimony?  Have you

13   ever heard anybody referred or use the nomenclature

14   Restaurants America?

15        A.    Yes.

16        Q.    In what context?

17        A.    Website

18        Q.    Any other context?

19        A.    That's a website.

20        Q.    What about a frequent diner program?

21        A.    Uh-hum.

22        Q.    Yes?

23        A.    Yes.

24        Q.    So the frequent diner program is known as

Case 1:14-cv-02112-RBW   Document 1-1   Filed 12/12/14   Page 62 of 69

Case 07-00937   Doc 229-7   Filed 03/19/08   Entered 03/19/08 18:28:18   Desc Exhibit
22-24   Page 23 of 28
ROGER GREENFIELD                      JULY 30, 2007

Page 330

1    the Restaurants America Frequent Diner Program?

2        A.    Correct.

3        Q.    Are all of the restaurants that you own

4    or co-own with Mr. Kasemir through entities that you

5    own or co-own with Mr. Kasemir, participate in the

6    frequent diner program?

7        A.    Yes.

8        Q.    If you earned points by eating at a Bar

9    Louie, can you redeem those points at a Red Star?

10       A.    Yes.

11       Q.    And the same if you earn points at a Bar

12   Louie, I can redeem them at any one of the Concepts?

13       A.    Yes.

14       Q.    And is the same vice versa, if I eat at

15   One North, I can redeem it at a Bar Louie?

16       A.    Correct.

17       Q.    Besides the frequent diner program and

18   the website, have you ever used the term Restaurants

19   America to describe anything?

20       A.    I don't recall.

21       Q.    Do you have a business card?

22       A.    No.

23       Q.    Have you ever had a business card?

24       A.    Yes.

ROGER GREENFIELD                           JULY 30, 2007

Page 331

1          Q.    Since January of 2005, have you had a

2    business card?

3          A.    Yes.

4          Q.    What did it say on the business card or

5    all the business cards you have had since January of

6    2005?

7          A.    My name and the address of the office.

8          Q.    Did it have a title on it?

9          A.    A title?

10         Q.    Yes.

11         A.    I don't think so.

12         Q.    Did it indicate what the name of your

13   company was anywhere on there?

14         A.    I think it said Restaurants America.

15         Q.    And what were you indicating to people

16   when you handed a business card to them saying Roger

17   Greenfield, Restaurants America?

18         A.    I was indicating you can call me at that

19   phone number and reach me at that address.

20         Q.    What was Restaurants America?

21         A.    Our website.  It also said

22   www.Restaurants-America.com.

23         Q.    So it's your testimony that Restaurants

24   America, in your mind, is nothing more than a

ROGER GREENFIELD          JULY 30, 2007

Page 332

1    website and frequent diner program; is that correct?

2          A.    Correct.

3          Q.    Do you know if Rachel Dennis has ever

4    held herself out as general counsel and vice

5    president of Restaurants America?

6          A.    If she did, I don't know.  It's not a

7    corporation, so I don't know how she can be

8    president or vice president or anything.  It's a

9    website.

10         Q.    It's a website?  Do you know if she is

11   general counsel and vice president of the website

12   Restaurants America?

13         A.    I don't know.

14         Q.    Do you know who or what entity

15   administers the Restaurants America frequent diner

16   program?

17         A.    What entity?  I don't know who we hired

18   to take care of it.

19         Q.    Whoever you hired, who pays that entity?

20         A.    Each restaurant.

21         Q.    Individually?

22         A.    Yes.

23         Q.    Each restaurant writes a check to

24   whatever entity?

ROGER GREENFIELD                         JULY 30, 2007

                                                    Page 333

1        A.    Well, if you get issued cards from One

2    North for your frequent diner program, then they are

3    issued to One North, and it goes on One North's

4    balance sheet, et cetera.

5        Q.    But the cost of administering it, if

6    there is an entity that administers the restaurant's

7    frequent diner program, like an accounting firm or

8    whatever, who pays that accounting firm?

9        A.    Each of the three entities that we have,

10   Red Star America, Concepts America, and Bar Louie

11   America.

12       Q.    How do they apportion the cost?

13       A.    By the amount of restaurants that each

14   one has.

15       Q.    Who determines that?

16       A.    Whatever is open.  If you have five

17   restaurants and out of 42, then --

18       Q.    Who made that determination that that's

19   how it would be done, how the restaurant concept,

20   holding companies, would apportion the cost?

21       A.    I don't know the accounting.

22       Q.    Let me make sure I understand.  The

23   various holding companies split the cost of

24   administering the Restaurants America Frequent Diner

ROGER GREENFIELD   JULY 30, 2007

Page 334

1    Program on a pro rata basis by the number of

2    restaurants?

3         A.    Frequent diner program?

4         Q.    Yes.

5         A.    Well, each restaurant pays Aloha.

6         Q.    I understand that, but I'm a frequent

7    diner, I have a Bar Louie Frequent Diner Program

8    card, but I can earn points at any of these

9    restaurants, right?

10        A.    Right.

11        Q.    Do I get a statement in the mail telling

12   me this is how many points I have accrued?

13        A.    No.

14        Q.    How do I know how many points I have

15   accrued.

16        A.    You go online.

17        Q.    On your website?

18        A.    Right.

19        Q.    Who administers the website to show Jon

20   Cyrluk, how many points I have accumulated to be

21   used at all these restaurants, who calculates all

22   that?

23        A.    Aloha.

24        Q.    The point of sales?

ROGER GREENFIELD                                    JULY 30, 2007

Page 335

1       A.      Yes.  The computer system.

2       Q.      The computer system?

3       A.      Right.

4       Q.      Who administers the computer system, who

5   is making sure it's glitch-free, error-free, it's

6   doing it accurately?

7       A.      It's just a program.  It's a frequent

8   diner program that's in the Aloha system.

9       Q.      So you are not aware of a single person

10  who makes sure that that program is run correctly?

11      A.      I don't know of anybody who does that.

12      Q.      Is it audited in any way?  What if

13  somebody says, "Hey, I know I ate at Bar Louie more

14  than you're showing up on my records," who fills

15  that complaint?

16      A.      Troy Eickelburger.

17      Q.      And who is Troy Eickelburger again?

18      A.      He installs new Aloha systems.

19      Q.      He is the IT guy?

20      A.      Right.

21      Q.      Who pays Troy, Mr. Eickelburber?

22      A.      I'm not sure.

23      Q.      The website, who owns the domain name

24  Restaurants-America.com?

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

**Winmar Construction, Inc.**

vs

**Theodore Kasemir and Roger Greenfield**

Case Number: _____

Date: **November 10, 2014**

**14 - 0 0 7 1 9 0**

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| **Charles H. Camp** | ☐ Attorney for Plaintiff |
| Firm Name:  **Law Offices of Charles H. Camp, P.C.** | ☐ Self (Pro Se) |
| Telephone No.:  **202-457-7786**   Six digit Unified Bar No.: **413575** | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury   ☒ 6 Person Jury       ☐ 12 Person Jury

Demand: $**575,732.20 PLUS INTEREST**       Other: _____

▮▮▮▮ CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:**2013 CA 004869 B**   Judge: **CRAIG ISCOE**   Calendar #: _____

Case No.: _____   Judge: _____   Calendar#: _____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                                     COLLECTION CASES

☒ 01 Breach of Contract        ☐ 07 Personal Property        ☐ 14 Under $25,000 Pltf. Grants Consent
☐ 02 Breach of Warranty        ☐ 09 Real Property-Real Estate ☐ 16 Under $25,000 Consent Denied
☐ 06 Negotiable Instrument     ☐ 12 Specific Performance      ☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 15 Special Education Fees     ☐ 13 Employment Discrimination ☐ 18 OVER $25,000 Consent Denied
☐ 10 Mortgage Foreclosure/Judicial Sale

---

**B. PROPERTY TORTS**

☐ 01 Automobile            ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion            ☐ 04 Property Damage                   ☐ 06 Traffic Adjudication
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process          ☐ 09 Harassment                ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection   ☐ 10 Invasion of Privacy           Not Malpractice)
☐ 03 Assault and Battery       ☐ 11 Libel and Slander         ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 12 Malicious Interference  ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation) ☐ 13 Malicious Prosecution    ☐ 20 Friendly Suit
☐ 06 False Accusation          ☐ 14 Malpractice Legal         ☐ 21 Asbestos
☐ 07 False Arrest              ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                     ☐ 16 Negligence- (Not Automobile, ☐ 23 Tobacco
                                   Not Malpractice)            ☐ 24 Lead Paint

---

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/Oct 14

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 04 Condemnation (Emin. Domain)
- ☐ 05 Ejectment
- ☐ 07 Insurance/Subrogation
  Under $25,000 Pltf.
  Grants Consent
- ☐ 08 Quiet Title
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)

- ☐ 10 T.R.O./ Injunction
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award
  (DC Code § 16-4401)

- ☐ 25 Liens: Tax/Water Consent Granted
- ☐ 26 Insurance/ Subrogation
  Under $25,000 Consent Denied
- ☐ 27 Insurance/ Subrogation
  Over $25,000 Pltf. Grants Consent
- ☐ 28 Motion to Confirm Arbitration
  Award (Collection Cases Only)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 30 Liens: Tax/ Water Consent Denied
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower
- ☐ 34 Insurance/Subrogation
  Over $25,000 Consent Denied

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-1519 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a) (1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

_____
Attorney's Signature

**November 10, 2014**
_____
Date

CV-496/Oct 14