UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Winmar Construction, Inc. )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>Theodore Kasemir and )<br>Roger Greenfield, )<br>)<br>Defendants. )<br>)<br>)<br>) | CIVIL ACTION NO.: 1:14-cv-02112 (RBW) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM

Plaintiff Winmar Construction, Inc. ("Winmar"), a Washington DC-based construction contractor, submits this memorandum of points and authorities in opposition to Defendants Theodore Kasemir's ("Kasemir") and Roger Greenfield's ("Greenfield") Motion for Leave to File Amended Answer and Counterclaim [Dkt. No. 17] ("Defendants' Motion") seeking to reform the Contract with Winmar and belatedly assert for the first time defenses of judicial estoppel and mutual mistake. The Defendants did not file a memorandum in support of their motion, instead including arguments related to that motion in Kasemir's Memorandum in Opposition to Winmar's Motion for Partial Summary Judgment ("Kasemir's Opp'n").

1

**INTRODUCTION**

Defendants' belated, and unexplained, assertion of two new affirmative defenses and a counterclaim at this late date in the discovery process, and nearly nine months after Winmar filed the Complaint in this case, would be unduly prejudicial and unfair to Winmar. The Defendants assert, without explanation, that the defenses were raised "in the context of their original Answer and otherwise throughout the course of discovery," Kasemir's Opp'n at p. 2. To the contrary, Winmar has not had an opportunity to address the Defendants' proposed affirmative defenses and counterclaim in the three depositions that have already been conducted, nor in requests for discovery. Indeed, Winmar was completely surprised by the belated assertion of affirmative defenses and a counterclaim, especially given that the Defendants have evidently possessed all of the information underlying their proposed affirmative defenses and counterclaim for many months. The Defendants' should be precluded from amending their answer as their amendments are unduly prejudicial to Winmar, unduly delayed, and, in part, futile.

**BACKGROUND**

Winmar performed extensive work between January and May 2013 on a build-out of a Washington, D.C. office building for a restaurant to be located at 700 6th Street, NW, Washington, DC 20001. Winmar performed the construction work pursuant to a Contract entered into between Winmar and a non-existent entity, "Restaurants America." Winmar prepared a draft of the Contract using a standard American Institute of Architects Contract. The draft Contract stated, in relevant part, that the contract is between "Restaurants America" and "Winmar Construction, Inc." Theodore Kasemir April 29,

2

2015 Deposition ("Kasemir Dep.") Ex. 31, Winmar Contract at p. 1.[1]  Winmar identified "Restaurants America" as the contracting party in accordance with the representations of the Defendants' office in their request for proposal.  The request for proposal sent to potential bidding contractors, including Winmar, stated "I am sure you are wondering where did this come from; in short, **our company Restaurants-America** is working on a project with Akridge Development [the building landlord] which provided us with your contact info." Kasemir Dep., Ex. 20 (emphasis added).  While an excerpt of the building lease was shared as part of a bid package sent to Winmar on behalf of "our company Restaurants America," Kasemir Dep., Ex. 20, the identity of the tenant was not identified in that lease excerpt.

On January 28, 2013, Jason Wilt, Vice President of Winmar, emailed a copy of the draft Contract for "review/comment/signature" to Kasemir and others. Kasemir Dep., Ex. 23.  Over the following three weeks, Mr. Wilt emailed Kasemir multiple times, requesting progress on getting the Contract finalized and executed.  In a February 18, 2013, email, Kasemir stated that the Contract was on his desk and that he would sign it when he returned to his office. Kasemir Dep., Ex. 29.  The next day, Kasemir's associate returned the signed Contract to Winmar via email, cc'ing Kasemir on that email.  Kasemir admits that the signature on the Contract is a signature of Kasemir's name, but states that Kasemir did not physically sign his name to the Contract and does not know who did.  *See* Kasemir Dep. 24:9-15.

On July 17, 2013, Winmar filed a complaint in the Superior Court of the District of Columbia (Case No. 2013 CA 004869 B) seeking $575,732.20 for unpaid work

---

[1] The Kasemir Deposition transcript and all exhibits thereto referred to in Winmar's Opposition to the Defendants' Motion are attached as Exhibit A to the Affidavit of Charles Camp ("Camp Aff.") [Dkt. No. 15-4].

performed under the Contract. The complaint was filed against "Restaurants-America Consulting Group, Inc. d/b/a Restaurants America,"[2] asserting breach of contract, quantum meruit and unjust enrichment. *See* July 17, 2013 Complaint, Camp Aff., Ex. C, [Dkt. No. 15-4].

On December 13, 2013, following RACGI's default, the Superior Court entered judgment for Winmar in the amount of $575,732.20 against RACGI plus a pre- and post-judgment interest rate of 6% per annum from May 10, 2013, until the judgment is paid in full, for work performed on the restaurant project pursuant to the Contract bearing Kasemir's signature. *See* December 13, 2013 Winmar Judgment, Camp Aff., Ex. F, [Dkt. No. 15-4]. As a result, Winmar discovered, and the Defendants have confirmed, that RACGI had no income or tax returns, financial statements prepared by accountants, leases on business premises, title documents relating to real estate or interest in land trusts, or bank account statements. Defendants Answer ("Defs.' Answer") at p. 9.

Winmar filed a motion in Superior Court on September 18, 2014 to hold Kasemir and Greenfield jointly and severally liable for the default judgment against RACGI on the same theories now forwarded in this Court: that Kasemir is liable on the Contract where he signed on behalf of a non-existent entity and that, in the alternative, Greenfield is liable on the judgment where he is an alter ego of RACGI. The motion was denied, which required Winmar to file a new lawsuit against Kasemir and Greenfield to hold them liable to Winmar for breach of contract, unjust enrichment and quantum meruit. Judge Iscoe, in his order denying Winmar's Motion seeking to hold Kasemir and Greenfield liable upon the Superior Court Judgment, stated that "[i]f Plaintiff wishes to seek relief from Mr. Greenfield and Mr. Kasemir **on the theory that they harmed**

---

[2] Restaurants-America Consulting Group, Inc. is herein referred to as "RACGI."

**Plaintiff while acting under the cover of a sham corporation**, **it must file and serve each of them with a complaint containing such allegations and naming them individually as a defendant.**" Kasemir's Opp'n, Ex. E, Judge Iscoe October 22, 2014 Order, Case No. 2013 CA 004869 B (emphasis added). In accordance with Judge Iscoe's order, Winmar filed a complaint in the Superior Court on November 12, 2014 naming each individual as a defendant on the theory that Kasemir has "harmed Plaintiff while acting under the cover of a sham corporation" by signing the Contract on behalf of a sham, non-existent entity and that, in the alternative, Roger Greenfield, is the alter ego of judgment debtor RACGI. Upon Defendants' motion, the case was removed from Superior Court to the United States District Court for the District of Columbia. Kasemir and Greenfield responded to the complaint on December 19, 2014. Nearly eight months later, the Defendants filed their Motion for leave to file an Amended Answer and Counterclaim.

## ARGUMENT

Fed. R. Civ. Pro. 8(c) requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively… any… matter constituting an avoidance or affirmative defense." This Circuit has explained that "a party's failure to plead an affirmative defense . . . generally results in the waiver of that defense and its exclusion from the case…." *Harris v. Secretary, U.S. Department of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) (internal quotation marks omitted). A court may give a party leave to amend their answer at a later date, but Fed. R. Civ. P. 15(a) states that the court should only give leave "when justice so requires." The court must have a justifying reason for the denial

of a motion for leave to amend a pleading, and may deny a motion on the basis of a number of factors. *Foman v. Davis*, 371 U.S. 178 (1962).

The Supreme Court in *Foman v. Davis* set forth the justifying reasons or factors for which a court may deny a motion for leave to amend a pleading. The *Foman* factors include "undue delay. . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment...." *Foman*, 371 U.S. at 182. These factors are plainly evident here and should preclude the Defendants from obtaining this Court's leave to amend the Defendants' answer at this late juncture.

Defendants are prohibited from raising affirmative defenses for the first time in dispositive motions, or oppositions thereto. *Harris* at 343. Defendants' argument to the contrary, raised in Section V of Kasemir's Opp'n, is unavailing. Kasemir's Opp'n at p. 23. Regardless of which party has brought forth the dispositive motion, it is the element of undue prejudice and unfair surprise that underpins the purpose of the rule articulated in *Harris*. As Defendants acknowledge, *Harris* and its progeny deal with the situation of having "the responding plaintiff [taken] by surprise and in a position of potentially not having conducted discovery on such defense." *Id*. As argued below, Winmar is in just such a position of surprise and prejudice having based valuable months of discovery on an incomplete version of the Defendants' Answer. A plain reading of *Harris* likewise vitiates the Defendants' argument, in Section VI of Kasemir's Opp'n, that an affirmative defense may present genuine disputes of material fact before those defenses have been properly plead. This Court has read *Harris* as observing that the strategy of inserting new affirmative defenses into dispositive motions:

> subtly alters the structure dictated by Rules 8(c) and 15(a) by (1) permitting parties to strategically avoid giving notice

> until later in the litigation process and (2) allowing the district court to weigh only undue prejudice rather than considering all of the potential factors listed in *Foman* that may weigh against amendment. Instead, *Harris* requires that the District Court await a request for leave to amend before considering an affirmative defense not originally raised in the pleadings.

*Butler v. White*, 67 F. Supp. 3d 59, 66-67 (D.D.C. 2014) *citing Harris* at 345 (internal quotation marks and citations omitted). Thus, this Court cannot consider Kasemir's proposed affirmative defenses and counterclaim in any context insofar as leave is not granted to amend the Defendants' Answers. As argued below, The Defendants' proposed amendments should be precluded as unduly prejudicial, unduly delayed, and, in part, futile.

**I.    The Defendants' Proposed Amendments Should Be Precluded Because They Would Be Unduly Prejudicial To Winmar.**

The Defendants' proposed amendments would be unduly prejudicial to Winmar given the high volume of discovery, which would be necessitated by the Defendants' proposed amendments. Of the *Foman* factors, "courts generally consider the 'most important factor' to be 'the possibility of prejudice to the opposing party.'" *Butler,* 67 F. Supp. 3d at 67 *quoting Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006). For the opposing party to "demonstrate prejudice sufficient to justify a denial of leave to amend the opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Id*. at 67-68 (internal quotation marks omitted). Where leave to submit an amended answer is sought near the close of discovery, "the question often hinges on

whether the amended pleading seeks to introduce new issues that would require additional discovery." *Id.*

Here, the addition of a counterclaim as well as affirmative defenses at this late date would greatly prejudice Winmar by introducing new issues that would necessitate significant amounts of additional discovery at great expense and the additional time of all parties, all shortly before the currently scheduled close of discovery.  Winmar has already conducted two depositions, as well as requests for discovery.  All of these discovery mechanisms would have to be repeated by Winmar, as Winmar has had no opportunity to conduct discovery specific to Townhouse DC LLC.  Likewise, Winmar has not had the opportunity to conduct discovery or depositions targeted at the affirmative defenses belatedly forwarded by the Defendants.

Neither can Winmar be said to have been on notice of the Defendants' plans to add a counterclaim or affirmative defense on the basis of mutual mistake.  Defs.' Motion at p. 4 (stating that ¶ 33 of the Defendants' Answer sufficiently raised the issue).  Defs.' Answer at ¶ 33 alleges only that Winmar "misidentified Townhouse DC, LLC as 'Restaurants America.'"  It does not state that it is the Defendants' position that Townhouse DC, LLC was the intended party to the Contract.  Nor would it be reasonable to expect such a reading from the contradictory terms of the Defendants' Answer.  The Defendants' Answer later asserts, "an employee of Concepts America, Inc. signed the Winmar Contract on behalf of 'Restaurants-America,' a federally registered trademark."  Defs.' Answer at ¶ 8.  By Defendants' logic, they would also be justified in belatedly springing upon Winmar a counterclaim to reform the Contract to include Concepts

America, Inc. and, confusingly, a federally registered trademark, as parties to the Contract, along with Townhouse DC, LLC.

Likewise, the Defendants assert that "Plaintiff has also been placed on notice of the defense of judicial estoppel during the course of discovery, including in Jason Wilt's deposition…." Defs.' Motion at ¶ 13.  There is nothing in Mr. Wilt's deposition that would clearly and unambiguously notify the Defendants that such an affirmative defense would be made.  More importantly, however, it is the pleading requirements of Fed. R. Civ. Pro. 8 that are intended to provide notice to parties. *Harris* at 344.  Notice cannot be cobbled together from ambiguous and contradictory statements.

Further, Defendants' counterclaim presents impractical challenges to the Plaintiff.  Pursuant to Fed. R. Civ. Pro. 30(b)(6), Winmar has a right to take the deposition of Townhouse DC, LLC.  The Defendants state in the caption of their proposed Amended Answer, attached as Exhibit 1 to their Motion, that Townhouse DC, LLC is "an Illinois limited liability company" and "a single-member limited liability company organized under the law of the State of Illinois." Defs.' Motion, Ex. 1, Proposed Amended Answer at p. 19.  However, according to Illinois's Corporate/LLC online database, available at www.cyberdriveillinois.com, Townhouse DC, LLC was placed into involuntary dissolution on April 10, 2015.  The Defendants fail to note this fact.  The Defendants have conveniently chosen a non-entity as a counter-plaintiff, which will be difficult, if not impossible, to depose or gain any meaningful discovery from.

Even if the Defendants' proposed amendments are not so unduly prejudicial as to warrant denial of their motion, they certainly warrant measures to mitigate the resultant prejudice of conducting last minute, expensive, and repetitive discovery.  Given the high

degree of discovery that would be required by the Defendants' amendments, the Court should exercise its discretion to award attorneys' fees and other appropriate costs in the event that the Court is inclined to grant the Defendants' Motion. *See Butler*, 67 F. Supp. 3d at 68 ("[I]f new discovery would be required, the Court may exercise its discretion to allow amendment, and mitigate any resulting prejudice by awarding attorneys' fees and other costs if appropriate.")

**II.     The Defendants' Proposed Amendments Should Be Precluded Because They Have Been Forwarded After Undue Delay.**

The Defendants should be further precluded from asserting affirmative defenses and a counterclaim at this late date because the amendments have been submitted after an undue, and unexplained, delay. Central to the question of whether an amendment should be precluded as a result of undue delay, "is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Delgado v. Orchard Supply Hardware Corp.*, 2011 U.S. Dist. LEXIS 113572 at *8 (E.D. Cal. 2011) *citing Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).

The Defendants admit that "[t]he facts constituting these defenses were alleged in Defendants' Answer to Plaintiff's Complaint," Kasemir's Opp'n at 22, but fail to explain with any specificity what legitimate motive precipitated their delayed motion for leave to amend their answer, nearly eight months after their first answer was filed on December 19, 2014 [Doc. No. 6]. In short, Defendants have not identified a single changed circumstance or uncovered fact, which would explain or legitimize their eight-month delay. To the contrary, Defendants acknowledge that they possessed all of the tools "constituting these defenses" in December 2014 when they filed their original answer, *Id.*

Combined with the undue prejudice caused to Winmar by the Defendants' belated proposed amendments, the Defendants' undue, and apparently tactical, delay should preclude this Court from granting the Defendants' motion.

### III. The Defendants' Proposed Affirmative Defense Regarding Judicial Estoppel Should Be Precluded Because Of The Futility Of This Amendment.

A party may not abuse Fed. R. Civ. Pro. 15(a) by belatedly forwarding amendments that would be wholly futile. A court may "deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss [or equivalent dispositive motion]." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004). Here, the Defendants' affirmative defense as to judicial estoppel is futile because it is plainly inequitable.

Judicial Estoppel is a futile affirmative defense where Winmar has validly forwarded alternative arguments seeking the collection of a significant debt owed. Significantly, "[j]udicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). If Courts were to apply the principal of judicial estoppel as the Defendants suggest, debtors would be given free reign to avoid creditors by misrepresenting their corporate identities. It is plainly inconsistent with principals of creditor protection for judicial estoppel to prevent a creditor from pursuing a debtor where the debtor's misrepresentations thwart the creditor's successful collection of a debt.

Further, judicial estoppel is "not intended to eliminate all inconsistencies no matter how slight or inadvertent." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010). This is demonstrably so in the context of alter ego liability as an alternative theory of liability.

*See, e.g. United States v. Kim*, 2015 U.S. App. LEXIS 14197 (9th Cir. 2015) (Judicial estoppel was not warranted where a party successfully argued in one proceeding that individual defendants were alter egos of their corporations and, in a later proceeding, that they were separate entities from their corporations).

Judicial estoppel is intended to prevent a party "from playing fast and loose with a court of justice by changing his position according to the vicissitudes of self-interest…." *Porter Novelli, Inc. v. Bender*, 817 A.2d 185, 188 (D.C. 2003). Winmar has plainly not engaged in any bad faith. Simply put, Winmar is owed a debt. It only seeks to collect the debt once. There is no basis for the Defendants' contention, Kasemir's Opp'n at p. 25, that Winmar has misled either the Superior Court or this Court. To the contrary, Winmar brings this action in consideration of the Judge Craig Iscoe's order in the Superior Court. In his order denying Winmar's Motion seeking to hold Kasemir and Greenfield liable upon the Superior Court Judgment, Judge Iscoe stated that "[i]f Plaintiff wishes to seek relief from Mr. Greenfield and Mr. Kasemir **on the theory that they harmed Plaintiff while acting under the cover of a sham corporation**, it must file and serve each of them with a complaint containing such allegations and naming them individually as a defendant." Kasemir's Opp'n, Exhibit E, Judge Iscoe October 22, 2014 Order, Case No. 2013 CA 004869 B (emphasis added). In accordance with Judge Iscoe's order, Winmar's complaint in the instant action names Kasemir and Greenfield individually as a defendant on the theory that Roger Greenfield is the alter ego of a sham corporation, and that Kasemir has "harmed Plaintiff while acting under the cover of a sham corporation" by signing the Contract on behalf of a sham, non-existent entity. There has been no bad faith on the part of Winmar. As such, the affirmative defense of

12

judicial estoppel is plainly inequitable, and, futile.

## CONCLUSION

For all the reasons stated above, this Court should deny Defendants' Motion for Leave to File Amended Answer and Counterclaim.

Date: August 21, 2015                    Respectfully submitted,

                                                                           s/     Charles H. Camp
                                                                           Charles H. Camp (DC Bar No. 413575)
                                                                           Theresa B. Bowman (DC Bar No. 1012776)
                                                                           Law Offices of Charles H. Camp, P.C.
                                                                           1025 Thomas Jefferson Street, NW
                                                                           Suite 115G
                                                                           Washington, DC 20007
                                                                           Tel: 202.457.7786
                                                                           Fax: 202.457.7788
                                                                           Email:  ccamp@charlescamplaw.com
                                                                           ***Counsel for Winmar Construction, Inc.***

**CERTIFICATE OF SERVICE**

      I certify that the foregoing *Winmar Construction, Inc.'s Opposition to Defendants' Motion for Leave To File Amended Answer And Counterclaim* was served via the Court's electronic filing system this 21st day of August, 2015 upon the following counsel for Defendants:

      Laura Fraher, Esq. (DC Bar No. 979720)
      SHAPIRO LIFSCHITZ & SCHRAM, P.C.
      1742 N Street, NW
      Washington, DC 20036
      Fraher@slslaw.com

      Robert M. Winter (IL Attorney No. 3122228)
      Catherine A. Cooke (IL Attorney No. 6289263)
      Robbins, Salomon & Patt, Ltd.
      180 North LaSalle Street, Suite 3300
      Chicago, IL 60601
      rwinter@rsplaw.com
      ccooke@rsplaw.com

                                                               s/     Charles H. Camp