**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
WINMAR CONSTRUCTION, INC.,              )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )
                                        )
THEODORE KASEMIR and ROGER              )
GREENFIELD,                             )
                                        )
            Defendants.                 )
_____)
                                        )
THEODORE KASEMIR, <u>et al.</u>,        )
                                        )
            Counter-Plaintiffs,         )
                                        )    Civil Action No. 14-2112 (RBW)
      v.                                )
                                        )
WINMAR CONSTRUCTION, INC.,              )
                                        )
            Counter-Defendant.          )
_____)
                                        )
WINMAR CONSTRUCTION, INC.,              )
                                        )
            Counter-Plaintiff,          )
                                        )
      v.                                )
                                        )
TOWNHOUSE DC, LLC and                   )
ROGER GREENFIELD,                       )
                                        )
            Counter-Defendants.         )
_____)

**<u>MEMORANDUM OPINION</u>**

Winmar Construction, Inc. ("Winmar"), the plaintiff in this civil matter, asserts claims of

breach of contract, unjust enrichment, and quantum meruit against defendants Theodore Kasemir

and Roger Greenfield for their alleged "failure to pay Winmar for labor and materials provided"

according to the terms of a construction contract for the "build-out of space in a large office building to be used as a restaurant [that would be operated as the] 'Townhouse Kitchen & Bar'" (the "Contract").  Complaint ("Compl.") ¶¶ 1, 9.  Currently before the Court is the Defendants' Motion for Summary Judgment ("Defs.' Mot.").  Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny the defendants' motion.

## I.    BACKGROUND

### A.    The Contract and the Various Parties

Winmar is a construction firm incorporated in the District of Columbia.  See Compl. ¶ 6.  On January 24, 2013, Winmar entered into the Contract with Restaurants America, see id., Exhibit ("Ex.") A (Standard Form Agreement Between Owner and Contractor for a Small Commercial Project ("Contract")) at 21,[2] "for construction services to be performed for the build-out of a restaurant to be called 'Townhouse Kitchen & Bar' located at 700 6th Street, NW, in Washington, D.C.," Defs.' Mem. at 1; see also Compl. ¶ 9.  On May 10, 2013, Winmar stopped its construction work on the premises "based on Restaurant America's failure to make payment to Winmar in accordance with the terms of the [Contract]."  Def.'s Mot., Ex. 2 (Affidavit of Jason Wilt ("Wilt Affidavit")) ¶ 5.

---

[1] In addition to the filings previously identified, the Court considered the following submissions in reaching its decision: (1) the defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."); (2) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"); and (3) the defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment ("Defs.' Reply").  In addition, the Court considered the exhibits attached to both Plaintiff Winmar Construction, Inc.'s Motion for Partial Summary Judgment ("Pl.'s Mot.") and the Reply Brief in Support of Plaintiff Winmar Construction Inc.'s Motion for Partial Summary Judgment ("Pl.'s Reply Brief"), to which the plaintiff cites in its opposition.  The plaintiff's motion, however, was denied by the Court on February 3, 2016, see Order (Feb. 3, 2016), ECF No. 29, and thus the Court does not reconsider the plaintiff's motion, accompanying memorandum, or reply.

[2] All page numbers for exhibits, with the exception of depositions, refer to the pagination generated by the Court's ECF system because neither party paginated the exhibits.

Restaurants America[3] was an "assumed corporate name" of Restaurants America Consulting Group, Inc.,  ("RACGI") from December 29, 2006, see Compl., Ex. D (Application to Adopt, Change or Cancel an Assumed Corporate Name dated Dec. 29, 2006) at 40, through June 1, 2009, see id., Ex. E (Application to Adopt, Change or Cancel an Assumed Corporate Name dated June 1, 2009) at 43, and from July 18, 2013, through at least July 1, 2015, see id., Ex. F (Illinois Application to Adopt an Assumed Corporate Name dated July 18, 2013) at 45. RACGI "was formed as an Illinois corporation on or about July 20, 2006[,] for purposes of providing various restaurant consulting services."  Defs.' Mot., Ex. 8 (Affidavit of Roger Greenfield ("Greenfield Affidavit") ¶ 2.

Greenfield "is the sole shareholder, director, President, Secretary, and Treasurer of RACGI," Compl. ¶ 7; Defendants' Amended Answer to Plaintiff's Complaint and Counterclaim ("Am. Answer & Countercl.") at 3, and "Kasemir has, at various times, identified himself as the 'Director of Finance' for . . . Restaurants[]America," Am. Answer & Countercl. at 4.  Kasemir authorized the signing of the Contract on Restaurants America's behalf.  Pl.'s Mot., Ex. A (Deposition of Theodore Kasemir ("Kasemir Deposition"), ECF No. 15-4 at 77:5–10.[4]

**B.      The Superior Court of the District of Columbia Lawsuit**

On July 17, 2013, Winmar filed a complaint against "Restaurants[]America Consulting Group, Inc. d/b/a Restaurants America" in the Superior Court of the District of Columbia, seeking damages in the amount of $575,732.20 for breach of contract, quantum meruit, and unjust enrichment.  See Defs.' Mot., Ex. 1 (Complaint filed in the Superior Court of the District

---

[3] "Restaurants America" is alternatively identified in various documents as "Restaurants-America."  Neither party contends that "Restaurants America" and "Restaurants-America" are separate entities.  Accordingly, the Court will refer to this entity as "Restaurants America."

[4] The defendants dispute Winmar's assertion that Kasemir signed the Contract on behalf of Restaurants America, see Am. Answer & Countercl. at 3–4, and the signature itself is illegible, see Compl., Ex. A (Contract) at 31.

of Columbia) at 4.  After RACGI failed to respond to the complaint, the Superior Court granted

Winmar's motion for a default judgment on December 13, 2013, and entered judgment against

RACGI in the amount of $575,732.20, plus interest (the "Superior Court judgment").  See id.,

Ex. 4 (Superior Court Order dated December 13, 2013) at 2.  Thereafter, Winmar registered the

Superior Court judgment in the Circuit Court of Cook County, Illinois.  See id., Ex. 6 (Filing of a

Foreign Judgment dated Feb. 25, 2014) at 1.

    After Winmar concluded that RACGI was unable to satisfy the Superior Court judgment,

Winmar filed in Superior Court a Motion to Hold Roger Greenfield T/A Restaurants America

and Theodore Kasemir Jointly and Severally Liable on Judgment, see id., Ex. 7 (Superior Court

Order dated Oct. 22, 2014) at 2, "on the same theories [as those in this case]: that Greenfield is

liable on the judgment where he is an alter ego of judgment debtor RACGI d/b/a 'Restaurants

America,' and in the alternative, that Kasemir is liable on the Winmar Contract he signed on

behalf of a non-existent entity," Pl.'s Opp'n at 7.  The Superior Court denied Winmar's Motion

on October 22, 2014, stating in its Order:

> If [Winmar] wishes to seek relief from [ ] Greenfield and [ ] Kasemir on the theory
> that they harmed [Winmar] while acting under the cover of a sham corporation, it
> must file and serve each of them with a complaint containing such allegations and
> naming them individually as a defendant.

Defs.' Mot., Ex. 7 (Superior Court Order dated Oct. 22, 2014) at 3.

## C.    The Current Lawsuit

    Winmar originally filed this action against Greenfield and Kasemir in the Superior Court

on November 12, 2014, see Compl. at 1, and the defendants timely removed the case to this

Court, see Notice of Removal (Dec. 12, 2014) at 1.  In its Complaint, Winmar asserts three

claims: (1) breach of contract as to Kasemir on the theory that "Kasemir is personally liable on

the Contract he signed in his name on January 24, 2013[,] on behalf of 'Restaurants America,' an

unregistered trade name," Compl. ¶ 28; (2) quantum meruit as to both Kasemir and Greenfield

on the grounds that they benefitted from Winmar's construction work, see id. ¶ 37; and (3) an

alternative action to hold Greenfield liable on the Superior Court judgment against RACGI, see

id. ¶ 41.  The defendants have raised the affirmative defenses of judicial estoppel and, in the

alternative, mistake, see Am. Answer & Countercl. at 16–18, and have filed an alternative

counterclaim requesting that the Court "enter an order reforming the Contract to reflect that the

Tenant, Townhouse DC, LLC[,] is the party that contracted with Winmar," id. at 19–20.  In

response, Winmar filed its own additional, alternative counterclaims for unjust enrichment

against Townhouse, see Winmar Construction, Inc.'s Answer to (Alternative) Counterclaim and

Supplemental Pleading to Assert Alternative Counterclaims Against Counter-Plaintiffs ¶¶ 13–19,

and to hold Greenfield liable for all of the debts that Townhouse owes to Winmar, id. ¶¶ 20–25.

## II.   STANDARD OF REVIEW

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure

56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on

a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-

moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v.

Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all

justifiable inferences" in the non-moving party's favor and accept the non-moving party's

evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v.

Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248), and "must do

more than simply show that there is some metaphysical doubt as to the material facts,"

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . .

must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477

U.S. at 248 (second omission in original) (citation and internal quotation marks omitted).

"[T]here is no [genuine] issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party," id. at 249 (citation omitted), and if the Court

concludes that the evidence adduced by the non-moving party "is merely colorable . . . or is not

significantly probative," id. (citations omitted), or if the non-moving party has otherwise "failed

to make a sufficient showing on an essential element of h[is] case with respect to which []he has

the burden of proof," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), then a genuine issue for

trial does not exist.

## III.  ANALYSIS

### A.  Judicial Estoppel

The defendants argue that Winmar's claims of breach of contract against Kasemir and

quantum meruit against Kasemir and Greenfield are barred by the equitable doctrine of judicial

estoppel. See Defs.' Mem. at 8–14. The doctrine of judicial estoppel "generally prevents a party

from prevailing in one phase of a case on an argument and then relying on a contradictory

argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001)

(quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)). "The inconsistent stances can be in

the same or different proceedings." Shea v. Clinton, 880 F. Supp. 2d 113, 117 (D.D.C. 2012).

The purpose of judicial estoppel is to "protect the integrity of the judicial process" by

"prohibiting parties from deliberately changing positions according to the exigencies of the

moment," thereby playing "fast and loose with the courts."  Moses v. Howard Univ. Hosp., 606

F.3d 789, 792 (D.C. Cir. 2010) (citations omitted).

> The District of Columbia Circuit has explained that
>
> [t]here are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

Id. at 798 (citing New Hampshire, 532 U.S. at 750–51).  The Supreme Court has made clear that

these factors are not "inflexible prerequisites," and "[a]dditional considerations may inform the

doctrine's application in specific factual contexts."  New Hampshire, 532 U.S. at 751.  "Doubts

about inconsistency often should be resolved by assuming there is no disabling inconsistency, so

that the second matter may be resolved on the merits."  Comcast Corp. v. FCC, 600 F.3d 642, 647

(D.C. Cir. 2010) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,

Federal Practice and Procedure § 4477, at 594 (2d ed. 2002)).  Furthermore, invoking judicial

estoppel is inappropriate in cases where "a party's prior position was based on inadvertence or

mistake."  New Hampshire, 532 U.S. at 753 (citations omitted).  At bottom, the doctrine of

judicial estoppel is an equitable one, "invoked by a court at its discretion."  Moses, 606 F.3d at

797 (quoting New Hampshire, 532 U.S. at 750).

### 1.    Clearly Inconsistent Positions

The defendants argue that judicial estoppel bars Winmar's breach of contract and

quantum meruit claims because Winmar already succeeded in persuading the Superior Court that

RACGI, not Kasemir or Greenfield individually, was the party that breached the Contract.

Defs.' Mem. at 10, 14.  According to the defendants, Winmar's position in this suit—that

Kasemir is liable under the Contract because Restaurants America is a non-existent entity, or, in

the alternative, that Kasemir and Greenfield are both liable based on quantum meruit given the

non-existence of a contract—is "clearly inconsistent" with its position taken in the Superior

Court suit.  Id. at 11, 14.  The plaintiff contends in response that "judicial estoppel is not

intended to eliminate all inconsistences no matter how slight or inadvertent," Pl.'s Opp'n at 11

(quoting In re Kane, 628 F.3d 631, 638 (3d Cir. 2010)), particularly "in the context of alter ego

liability as an alternative theory of liability," id.  According to Winmar, "[i]t is plainly

inconsistent with principles of creditor protection for judicial estoppel to prevent a creditor from

pursuing a debtor where the debtor's misrepresentations thwart the creditor's successful

collection of a debt."  Id.

     The Court concludes that Winmar's positions, although somewhat inconsistent, are not

"clearly inconsistent" to warrant the equitable application of judicial estoppel because Winmar's

first position in Superior Court—that the party to the Contract was RACGI d/b/a Restaurants

America, which was accepted by the Superior Court in ruling on its motion for default

judgment—was necessary because RACGI failed to respond to Winmar's complaint.  In other

words, Winmar did not benefit from any discovery concerning RACGI, its corporate identities,

or its assets, that would have enabled Winmar to amend its Superior Court pleadings to add

additional defendants or assert alternative theories regarding who was liable on the Contract

prior to filing its motion for the default judgment.  See, e.g., Nat'l Union Fire Ins. Co. of

Pittsburgh, Inc. v. Mfrs. & Traders Trust Co., 137 F. App'x 529, 531 (4th Cir. 2005) (concluding

that an insurer was judicially estopped from arguing in federal court that certain entities were

fictitious because its insured had successfully established in state court that the entities were

legitimate, "after significant investigation and across multiple amendments to the complaints").

The Court concludes that it would not be equitable to allow the defendants, who are both associated with Restaurants America and RACGI in various capacities, see Compl. ¶ 7; Am. Answer & Countercl. at 3–4, to benefit from RACGI's decision to not participate in the Superior Court proceedings, even though "Restaurants America" was re-registered as a trade name for RACGI on July 18, 2013, see Compl., Ex. F (Illinois Application to Adopt an Assumed Corporate Name dated July 18, 2013) at 45, the day after Winmar's suit was filed in Superior Court, see Defs.' Mot., Ex. 1 (the Complaint filed in the Superior Court) at 1; cf. Jaffe v. Accredited Sur. & Cas. Co., Inc., 294 F.3d 584, 595 n.7 (4th Cir. 2002) ("Judicial estoppel does not apply when a party's assertedly inconsistent positions stem from reliance on statements made to the court by an opponent, which later prove untrue.").

Moreover, the defendants concede in their counterclaim that Restaurants America was not the intended party to the Contract, but rather contend that Townhouse DC, LLC was the intended contracting party.  See Am. Answer & Countercl. ¶¶ 10–15.  Thus, it appears that Winmar would have been confused as to who was the contracting party.  As another member of this Court has stated, "[c]onfusion . . . is not the kind of 'intentional self-contradiction' the doctrine of judicial estoppel is intended to prevent."  Ashraf-Hassan v. Embassy of France, 185 F. Supp. 3d 94, 105 (D.D.C. 2016).  Given the District of Columbia Circuit's preference for "assuming . . . no disabling inconsistency, so that the second matter may be resolved on the merits," see Comcast Corp., 600 F.3d at 647, the Court concludes that Winmar's breach of contract and quantum meruit claims are not barred by judicial estoppel because Winmar's positions taken in the Superior Court and in this Court are not "clearly inconsistent."[5]

---

[5] The defendants also argue that Winmar's complaint is "internally inconsistent" because, "[o]n the one hand, Winmar is attempting to use the Judgment previously obtained against RACGI to pursue a piercing the corporate veil claim and hold Greenfield liable for the Judgment against RACGI in the Instant Lawsuit (Count III)[, w]hile at
(continued . . .)

### 2.     Perception that the Superior Court Was Misled

The defendants argue that "Winmar's attempt to pursue its claim against Kasemir

individually," Defs.' Mem. at 11, as well as its claims based upon quantum meruit after

"successfully obtain[ing] a breach of contract Judgment . . . for the same construction project,"

id. at 14, "creates the distinct perception that the Superior Court or this Court (or both) are being

misled," id. at 11.  Winmar contends in response that it "has plainly not engaged in any bad faith

whatsoever [because] [i]t only seeks to collect the debt once," and that it has not misled the

Superior Court or this Court because it "brings this action as a direct extension of [the Superior

Court's] order."  Pl.'s Opp'n at 12.

The Court agrees that there is no perception that the Superior Court was misled because

Winmar attempted to assert through a post-judgment motion in Superior Court "the same

theories now forwarded in this Court," Pl.'s Opp'n at 7, but the Superior Court directed Winmar

to file a new complaint, see Defs.' Mot., Ex. 7 (Superior Court Order dated Oct. 22, 2014) at 2.

As noted earlier, in its Order, the Superior Court judge stated:

> If [the p]laintiff wishes to seek relief from [ ] Greenfield and [ ] Kasemir on the
> theory that they harmed [the p]laintiff while acting under the cover of a sham
> corporation, it must file and serve each of them with a complaint containing such
> allegations and naming them individually as a defendant.

Id., Ex. 7 (Superior Court Order dated Oct. 22, 2014) at 3.  Thereafter, Winmar filed its

Complaint in this case in Superior Court, but listed the first Superior Court action as a related

---

( . . . continued)
the same time, Winmar is claiming that Kasemir, not RACGI, is liable as the party to the Contract."  Defs.' Mem. at
11; see also Defs.' Reply at 17 (asserting that Winmar is attempting "to take advantage of the [Superior Court]
Judgment against RACGI by seeking to hold Greenfield personally liable for that Judgment in Count III of the
[Complaint], while claiming in Counts I and II that there is no basis for a judgment against RACGI").  The
Complaint clearly states, however, that Count III is an "alternative" claim, see Compl. ¶¶ 2, 41, and thus any internal
inconsistency between that count and the other counts is permitted under Federal Rule of Civil Procedure 8(d)(2),
see McNamara v. Picken, 950 F. Supp. 2d 125, 128 (D.D.C. 2013) ("Under [Federal Rule of Civil Procedure
8(d)(2)], a plaintiff may plead inconsistent theories of liability, and may even argue alternative claims to a jury.").

case on the Information Sheet.  See Notice of Removal, Exhibit 1 (Documents from Superior

Court) at 68.  Accordingly, the Court finds that Winmar complied with the Superior Court's

Order in good faith, and thus, there can be no basis to find that the Superior Court was misled.

### 3.   Unfair Advantage to the Plaintiff or Unfair Detriment to the Defendants

The defendants contend that "Winmar's actions in continuing to maintain its inconsistent

position would result in an unfair advantage to Winmar," namely, "to use its Judgment against

RACGI as a method of imposing personal liability on Greenfield in Count III, while also

claiming that there was no contract between Winmar and RACGI in an effort to obtain a

judgment against Kasemir."  Defs.' Reply at 12; see also Defs.' Mem. at 11.  Again, the Court

disagrees.

The Court finds that Winmar will not derive an unfair advantage, nor will the defendants

suffer any unfair detriment, because it credits Winmar's assertion that it "only seeks to collect

the debt once."  Pl.'s Opp'n at 12; cf. Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir. 2006)

("Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors

who are themselves victims of the debtor's deceit.").  Accordingly, this concession, coupled with

the Court's other two findings, defeats the defendants' position that judicial estoppel bars

Winmar's breach of contract and quantum meruit claims.

### B.   Action to Hold Greenfield Liable for Judgment Against RACGI

Next, the defendants assert that "Winmar cannot meet its burden to establish that [ ]

Greenfield is personally liable for the judgment against RACGI."  Defs.' Mem. at 17.  To pierce

the corporate veil under District of Columbia law,[6] the plaintiff must show "(1) unity of

---

[6] The Court concludes, and the parties do not dispute, see Defs.' Mem. at 15; Pl.'s Opp'n at 20–21, that District of Columbia law applies, even though RACGI is incorporated in Illinois, because "[t]he District is the place where the
(continued . . . )

ownership and interest, and (2) [either] use of the corporate form to perpetuate fraud or wrong, or other considerations [if] justice and equity justify it." Estate of Raleigh v. Mitchell, 947 A.2d 464, 470 (D.C. 2008) (citations and internal quotation marks omitted).  In assessing whether these requirements have been satisfied, courts generally consider the following factors: "(1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors." Id. at 471 (quoting Bingham v. Goldberg. Marchesano. Kohlman. Inc., 637 A.2d 81, 93 (D.C. 1994)).  The District of Columbia Court of Appeals has noted that, "[b]ecause piercing the corporate veil is a doctrine of equity, the factor which predominates will vary in each case." Vuitch v. Furr, 482 A.2d 811, 815–16 (D.C. 1984) (footnote omitted).

### 1.      Whether Corporate Formalities Have Been Disregarded

The defendants contend that there is no genuine dispute regarding whether RACGI abided by corporate formalities because "the corporate books and records produced to Winmar by RACGI in the post-judgment collection proceedings . . . demonstrate that RACGI maintained written bylaws, regularly adopted corporate resolutions, filed annual corporate reports, and adhered to all other formalities."  Defs.' Mem. at 18; Defs.' Reply at 22–23; see also Defs.' Mot., Ex. 8 (Greenfield Affidavit) at 4–46 (containing RACGI's (1) articles of incorporation, (2) by-laws, (3) resolutions, (4) letters from the Internal Revenue Service accepting RACGI as an "S" corporation and assigning it an employer identification number, and (5) stock certificate).

---

( . . . continued)
relevant contract[] w[as] performed, the jurisdiction that would be most affected by performance, and the place where the contract[] w[as] allegedly breached," TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc., 808 F. Supp. 2d 60, 66 (D.D.C. 2011).

Winmar argues in response that RACGI disregarded corporate formalities because it "never held bank accounts, never had employees, never filed tax returns, never obtained clients or received income, never held any ownership in any property, and never owned or leased any computer equipment or software."  Pl.'s Opp'n at 22–23.  But, Winmar does not cite any authority, see id., nor could the Court find any, to support its proposition that a corporation's lack of bank accounts, employees, tax returns, clients, or property ownership signifies a disregard of corporate formalities.  As a result, these documents do not create a genuine issue of fact as to whether RACGI disregarded corporate formalities.

Winmar also notes that Restaurants America was not registered as an assumed corporate name of RACGI in 2012 and 2013, see Pl.'s Opp'n at 2–3; Compl., Ex. E (Application to Adopt, Change or Cancel an Assumed Corporate Name dated June 1, 2009) at 43; id., Ex. F (Illinois Application to Adopt an Assumed Corporate Name dated July 18, 2013) at 45, when Restaurants America solicited bids for the construction project and executed the Contract with Winmar, see Pl.'s Mot., Ex. A (Kasemir Deposition), ECF No. 15-4 at 52 (e-mail dated August 2, 2012, from Joanna Kolakowski to Winmar ("Aug. 2, 2012 Bid Solicitation"); Compl., Ex. A (Contract) at 23.  Greenfield stated in his deposition, however, that Restaurants America "isn't really a company," Pl.'s Reply, Ex. A (Deposition of Roger A. Greenfield ("Greenfield Deposition")) at 26:20–21, but rather a "website," id., Ex. A (Greenfield Deposition) at 45:6.  Another member of this Court has held that whether a company is in good corporate standing and has a valid certificate to conduct business in the District of Columbia is relevant to the question of whether corporate formalities were disregarded.  See TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc., 808 F. Supp. 2d 60, 67–68 (D.D.C. 2011) (denying the individual defendant's motion for summary judgment on the veil-piercing issue because the defendant "was the only one in

charge," the company's certificate of authority was revoked, and the defendant mishandled corporate records). Accordingly, whether RACGI disregarded corporate formalities by doing business under an unregistered assumed corporate name is a genuine issue of fact that must be decided at a trial.

2.      **Whether RACGI Funds and Assets Were Extensively Intermingled With Personal Assets**

The defendants argue that Winmar has not produced any evidence showing that RACGI funds and assets were commingled with the defendants' personal assets. See Defs.' Mem. at 19. Winmar responds that there is a genuine dispute as to whether Greenfield commingled personal funds with RACGI funds because Greenfield (1) incorporated RACGI and other corporations "to protect his personal assets and confuse creditors"; (2) admitted in his deposition that he "put a lot of personal money into the company"; and (3) offered to "use his personal property to secure the debt owed to Winmar" before Winmar filed its lawsuit against RACGI in Superior Court. Pl.'s Opp'n at 26–27.

The Court agrees with the defendants that Winmar has not set forth sufficient facts that show that RACGI was established "to protect his personal assets and confuse creditors." Id.; Defs.' Reply at 24–25. Although Greenfield admitted in his deposition that some of his companies were created "to protect [his] own assets," that admission, in isolation, does not demonstrate extensive commingling for the purpose of piercing the corporate veil. See Harris v. Wagshal, 343 A.2d 283, 287 (D.C. 1975) ("[F]ormation of a corporation in order to avoid personal liability is not itself, standing alone, an abuse of the corporate form."), declined to follow on other grounds, Chatman v. Lawlor, 831 A.2d 395, 400 n.8 (D.C. 2003).

Similarly, the Court is unconvinced that Greenfield's statements that he "put a lot of personal money into the company" and that he would "provide personal guarantees" if Winmar

14

finished its construction work, see Pl.'s Reply, Ex. A (Greenfield Deposition) at 79:19–82:9,

demonstrate that RACGI's funds and assets were "extensively intermingled" with Greenfield's

personal assets.  The Court agrees with the defendants that no case law states that owners or

shareholders who "invest[], loan[], or outright gift[] personal funds to their business endeavors

[ ] risk being found guilty of 'commingling' business and personal funds."  See Def.'s Reply 11

n.5.  Thus, Winmar has failed to present specific facts showing that RACGI extensively

intermingled its funds and assets with Greenfield's to create a genuine issue of fact for trial.

### 3.      Whether RACGI Was Inadequately Initially Capitalized

The defendants argue that Winmar has failed to show that RACGI's initial capitalization

of $1,000 was inadequate because an adequate level of capitalization depends on the

corporation's type of business, and RACGI "required no further capital" as a "consulting

services business."  Defs.' Mem. at 19; Defs.' Reply at 24.  Winmar responds that RACGI's

initial capitalization—its "$1,000 filing fee for its creation in Illinois"—coupled with its current

insolvency, demonstrates inadequate capitalization.  Pl.'s Opp'n at 25.

"Whether capitalization is adequate is understandably a function of the type of business

in which the corporation engages."  Labadie Coal Co. v. Black, 672 F.2d 92, 99 (D.C. Cir. 1982).

Here, the Court concludes that Winmar has demonstrated the existence of a genuine issue of

material fact as to whether RACGI was adequately capitalized because, although Greenfield

states that RACGI was formed "for purposes of providing various restaurant consulting

services," Def.'s Mot., Ex. 8 (Greenfield Affidavit) ¶ 2, and that "the consulting services it

anticipated providing when it [was] formed . . . never materialized," id., Ex. 8 (Greenfield

Affidavit) ¶ 4, Restaurants America solicited the bid for the $1,024,824 contract in this case

through an e-mail from Joanna A. Kolakowski, whose signature identifies her as the "Director of

Architecture and Development" of Restaurants America, Pl.'s Mot., Ex. A (Kasemir Deposition),

ECF No. 15-4 at 52 (Aug. 2, 2012 Bid Solicitation); Compl., Ex. A (Contract) at 23.  Thus, there

is a genuine dispute of material fact regarding both the type of business RACGI was actually

engaged in, and whether any business it engaged in as Restaurants America had the requisite

level of capitalization.

> **4.**      **Whether RACGI Was Fraudulently Used to Protect Personal Assets from the Claims of Creditors**

The defendants contend that Winmar has not set forth any evidence "that RACGI was

used for purposes of committing a fraud or injustice on Winmar."  Defs.' Mem. at 19.  Winmar

contends in response that Greenfield's statement in his depositions, that he set up RACGI to

protect personal assets, creates "a genuine dispute as to whether Greenfield utilized RACGI as

one of a web of shell corporations in order to defraud its creditors."  Pl.'s Opp'n at 26.  As the

Court already stated in its analysis concerning the alleged intermingling of RACGI's and the

defendants' personal funds, the formation of a company to avoid personal liability "is not [itself]

an abuse of the corporate form."  See Harris, 343 A.2d at 287.  The facts surrounding the

solicitation and execution of this Contract, however, particularly the fact that Restaurants

America solicited construction bids and executed the Contract, see Pl.'s Mot., Ex. A (Kasemir

Deposition), ECF No. 15-4 at 52 (Aug. 2, 2012 Bid Solicitation); Compl., Ex. A (Contract) at 23,

even though Restaurants America was not registered as an assumed corporate name of RACGI at

that time, but was thereafter so re-registered following Winmar's filing of its lawsuit against

RACGI in Superior Court, see Pl.'s Opp'n at 2; Compl., Ex. E (Application to Adopt, Change or

Cancel an Assumed Corporate Name dated June 1, 2009) at 43; id., Ex. F (Illinois Application to

Adopt an Assumed Corporate Name dated July 18, 2013) at 45, as well as the defendants'

evasive answers regarding who actually signed the Contract on behalf of Restaurants America,

see Pl.'s Mot., Ex. A (Kasemir Deposition), ECF No. 15-4 at 32–37; Pl.'s Reply, Ex. A (Greenfield Deposition) at 23:19–24:21, and the defendants' assertions in their counterclaim that a third entity, Townhouse DC, LLC, is the actual intended contracting party, see Am. Answer & Countercl. at 19–20, create a genuine dispute of material fact regarding whether RACGI was fraudulently used to avoid liability by doing business under a name that had no legal status, cf. Lawlor v. District of Columbia, 758 A.2d 964, 975 (D.C. 2000) (affirming the trial court's imposition of shareholder liability because, among other reasons, the evidence showed that the purpose of the corporation was to "shield" the assets of a related corporation "from the IRS and from other taxing authorities").

### 5.    Conclusion

For the foregoing reasons, the Court concludes that there are genuine disputes of material fact regarding whether RACGI disregarded corporate formalities, was adequately capitalized, and was fraudulently used to shield the personal assets of the defendants from creditors, and thus, summary judgment as to whether Greenfield is personally liable for the Superior Court judgment is inappropriate.[7]

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the doctrine of judicial estoppel does not bar Winmar's claims for breach of contract and quantum meruit, and that there are genuine

---

[7] The defendants argue in their reply that Winmar "failed to comply with this Court's local summary judgment rules" because Winmar's Statement of Disputed Issues of Material Fact "contains improper denials and speculative statements" without "appropriate citations to evidentiary materials of record." Defs.' Reply at 5–6 & n.3.  The Court finds that Winmar's Statement of Disputed Issues of Material Fact, "though not an archetype of good pleading," when considered in conjunction with its Opposition as a whole, "appears to identify the material facts that are in dispute with corresponding citations to affidavits and interrogatories" that appear in the record. Escamilla v. Nuyen, __ F. Supp. 3d __, __, 2016 WL 4148179 at *3 (D.D.C. Aug. 4, 2016) (contrasting the case with prior cases in this Circuit in which a party violated Local Rule 7(h) by failing to file any affidavits or simply incorporating evidence into the memorandum without reference to particular facts).  Accordingly, the Court finds no violation of Local Rule 7(h).

issues of material fact regarding whether RACGI's corporate veil should be pierced.  Therefore,

the Court must deny the defendants' motion for summary judgment.

**SO ORDERED** this 2nd day of February, 2017.[8]


REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.